BONEY ET AL. *vs.* HOLLINGSWORTH ET AL.

1. Courts of equity grant relief against conveyances obtained by misrepresentation or mistake; and if the parties occupy a relation from which an unusual degree of confidence, affection or sense of duty naturally springs, the utmost degree of good faith is required from the party in whom the trust is reposed, and he must show that his contract is in every respect just, fair and equitable.

2. A father executed a deed conveying certain lands to his sons, but filed it away among his papers, and never delivered it; after his death the grantees obtained a voluntary relinquishment from their sister of all her interest in the lands, by representing to her that their father on his death bed had declared it to be his intention that they should have them: The relinquishment was set aside in equity, because the grantees failed to show that they stated fully and fairly their father's dying declarations.

ERROR to the Chancery Court of Sumpter.

Heard before the Hon. J. W. LESESNE.

Boney et al. v. Hollingsworth et al.

THE defendants in error were the complainants below, and the bill was filed by them as the heirs of Kitty J. Hollingsworth, who was a daughter of Winbeck Boney, against the plaintiffs in error, who are the other heirs of said Winbeck.

The charges are, in substance, that the defendants, Wm. G. and R. C. Boney, after the death of the said Winbeck, their father, the said Wm. G. being the administrator of the estate, fraudulently to procure the lands of which he died seized, caused a deed of relinquishment of the same to be prepared, and by false representations procured it to be signed by several of the heirs, and that it bears the name of the said Kitty J., who at its date was in life and a widow ; that she never signed it ; that it was a fraudulent contrivance of said defendants to get the lands; that they got her to visit them and signed her name to it, and taking advantage of her ignorance of business and confidence in them, her brothers induced her to go before a justice of the peace and acknowledge it as her deed, and that there was no consideration for the same ; that the false representations made by the said W. G. and R. C. Boney to obtain said deed of relinquishment, were representations made to the heirs that the said Winbeck had in his life-time, and many years before his death, conveyed said lands to them in fee ; that the said Winbeck never made such deed, or, if such was found amongst his papers, that it was never perfected or expected to operate as a deed or executory devise ; that to prevent accounting for said lands in the way of advancement, the said Wm. G. and R. C. Boney fraudulently induced the Orphans' Court to enter into the final decree, that the heirs consented in writing the advancements received by them should not be discounted ; that said defendants fraudulently put the name of Kitty J. to said agreement, and that she had received no advancement.

The prayer is, that the deed of relinquishment be declared void ; that the complainants have set apart to them their portion of the lands, and that an account of the rents and profits of the same since they have been in possession of said defendants, be taken ; that they be decreed to pay the complainants their proportion of the same, and for general relief.

The answers of Wm. G. and R. C. Boney are substantially the same, and allege that said Winbeck did sign and seal a deed to them for the said lands, and caused it to be witnessed as

signed, sealed and delivered ; and that he rested from that time in the confident expectation that said deed (though not formally delivered but remaining in his hands filed with other like deeds to the other heirs) would operate to convey said lands to said defendants, at least at his death, and subject only to dower if his wife should survive him, and that it had been so understood in the family ; that said Winbeck spoke of said lands as for his sons, the said defendants, and stated his reasons for giving them a larger share of his property to be, because they had helped him much ; that in the last illness of the said Winbeck, upon being admonished by his physician to make a disposition of his worldly matters, referring to the deed for the lands and to other deeds made to some of the other heirs for negroes, which were lying with the deed for the lands, he said, in effect, "that he had made deeds of gift ; that they were bunglingly done, but that he thought they would be effectual, and that for the residue of his property, not embraced in said deeds and not given off, the law would divide it as well or better than he could ;" that it was the wish and expectation of the said Winbeck, from the making of said deed, and his dying wish and expectation, that his sons should have and own said lands after him, subject only to the dower, and that his belief was that said deed was and would be effectual to secure the accomplishment of such wish ; that he had been guided in his life-time by such expectations, in giving off negroes and other property to the other heirs, most of which deeds were retained by him, as was the deed of the lands; and that he had given off and advanced to each of his other children negroes and other property, which he designed as an advancement to them, and to the said Kitty J. among the rest.   The charge of false or fraudulent representations is denied, and it is insisted, that they made no other representations in relation to said deed than was consistent with the fact, that said Winbeck signed and sealed said deed, and retained it among his papers, and had intended and declared that the same would be effectual to convey and secure said lands at his death subject only to dower ; that there was no fraud in obtaining the deed of relinquishment from the other heirs ; that the same was given for the purpose of effectuating the wishes of their father, and upon the mutual agreement of the heirs with each other to carry out the intent of their deceased father as to the property de-

signed to be given off, notwithstanding any legal defects in the gifts or conveyances, so that each, the said Kitty among the rest, should retain what had been given off to each; that the written consent not to discount the advancements referred to in the bill, was given and signed by the distributees whose names appear to the same except the said Kitty J.; that her name was signed by the said R. C. Boney as her agent, upon her verbal authority; that the name of the said Kitty J., although not written by her to said deed of relinquishment, was knowingly and freely ratified and confirmed by her, without any fraud or imposition practiced upon .ier; that said Kitty J. had received, by way of advancement, a negro girl, who has since had children, and which she retains under the agreement.

The material portions of the evidence are stated in the opinion of the court.

The Chancellor, on the hearing, set aside the deed as to Mrs. Hollingsworth, and decreed that the complainants, as her heirs at law, be invested with such interest as they would have taken by descent; that an account of the rents be taken, &c. The decree of the Chancellor is assigned for error in this court.

JONATHAN BLISS, for plaintiffs in error:

1. The answers deny explicitly the fraud, imposition and abuse of confidence charged in the bill, and are responsive to the bill in this respect, and not controlled by the proof. They allege that the father did make such a deed as represented; that he designed it to take effect, at least, at his death; that he did not change his purpose, but continued in it until his death. Parker proves the execution of the deed, the purpose of the grantor to make it, his subsequent reference to it as effective and "sufficient;"' and Jones' testimony authorizes the conclusion to which he came, that the grantor sanctioned it again just before his death.

2. There are not wanting authorities to show that the deed might well be regarded as effective.—1 Johns. Ch. R. 329; 5 ib. 224; 5 B. & C. 671; 2 Greenleaf's Cruise, note 1, under pages 42–3, title 32, ch. 2, § 64.

3. But if there was ignorance or misapprehension, it was common to both parties, and to all the heirs. Ignorance of fact or law, if the fact or law be doubtful, if common to both par-

ties, will not vitiate a compromise, especially in case of family arrangements.—Neale v. Neale, 1 Keen (15 En. Ch. R.) 672; 2 Atk. 587; 5 W. & S. 111; 6 Watts 48; 5 Peters 99; 2 Rand. 442.

4. The answers deny the exercise of improper influence in the procurement of the release. But in cases of family arrangements, where the effect is to promote concord, the stringency of the rule as to influence seems at least relaxed. Were it not so, perhaps plausible grounds might always be found for overturning such arrangements; certainly so, if the fact of the relation is to be made evidence of the influence. Yet it is between such parties, and to uphold such arrangements, that the courts go farthest.—1 Vesey Jr. 19; 2 Eden 175; 7 Clarke & Fin. 318; 2 Th. 425; 2 Leading Cases in Eq., Part 2, 249, 250 to 266.

5. The compromise in this case was by deed acknowledged, and it cannot be set aside, unless on grounds of mistake or fraud clearly made out.—6 Munford 406; Thomas v. Roberts, 2 Bibb 343; 1 Watts 216; 6 Watts 421; 1 W. & S. 425; 8 ib. 31; 2 Paige 278; 3 Dana 5. The facts, in reference to the deed from the father and his intent, were before the grantor, and she joined in giving effect to that intention with a knowledge of the supposed defect in the deed from the father; otherwise, there could have been no occasion for any aid from a release.

6. The execution of a release of one party, is a sufficient consideration for a promise or release by the other, even if the supposed right released is invalid.—11 Conn. 12; 17 ib. 511; 11 Verm. 483; 4 Met. 270.

R. H. SMITH, contra:

If one, in ignorance of his right to an estate, release it, or if his right be concealed from him, the release will be set aside on the ground of mistake.—1 Story's Eq. § 130, and note. So, if the parties are not mutually ignorant, a court of chancery will never hold them bound; they must act with full knowledge of all the doubts and difficulties that do arise. Transactions are not to be treated as binding, even as family arrangements, when the doubts existing, as to the rights alleged to be compromised, are not presented to the party interested.—Ib. § 131. And these principles are of peculiar force, when mutual trust and

confidence are reposed between the parties. In such cases, the law requires the utmost degree of good faith in all transactions. *Ib.* § § 217, 218. If it is not employed, the transaction is a fraud, an actual fraud. Confidence and affection are not to be repaid by hard bargains ; and an administrator, with title deeds in his possession, and the confidence of a sister in his word, is not to make advantages of her. In such cases, courts of equity go much beyond the doctrine applicable to mistakes and actual fraud.—*Ib.* § 307. If confidence is reposed, it must be faithfully acted upon, and preserved from any intermixture of imposition. If influence is acquired, it must be kept free from the taint of selfish interests, and cunning and over-reaching bargains. If means of personal control are given, they must always be restrained to purposes of good faith and personal good.

In such cases, courts of equity do sit to enforce a technical morality.—*Ib.* 308. The court, acting in aid of general morals, will grant relief in all cases where confidence is reposed and abused.—*Ib.* § § 122, 123, 124 125, 128, 321, 323, and notes; 72 Law Library, pp. 73, 255, 256, 257 ; Leonard v. Leonard, 2 Ball & B. 171 ; Maddeford v. Austwick, 1 Simon 89. The unreasonableness of the transaction itself implies fraud.—1 Story's Eq. § 128.

2. The facts do not leave the fraud to inference, and do not leave the case to stand on the doctrines of mistake or implied fraud, but plainly establish a fraud. There was no family settlement. The sons took all, and gave nothing. They knew the deed was not good, as a deed, nor intended to take effect as such, and their answer shows it ; nor was it as a will. They had it in possession ; Mrs. Hollingsworth was on a visit to the paternal mansion, in the midst of sorrow, when any representation that her deceased father intended or wished the act, would be of improper and controlling influence. The time, the occasion, were not only unsuited to such a transaction, but their selection is proof of the advantage sought. The representation made was false, as is well shown by the Chancellor's decree ; the execution of the deed in Mrs. Hollingsworth's name shows a double fraud : first, to commit Mrs. Hollingsworth to their signing her name to the deed of release; second, to use her assent as an influence on the others. That it was a pre-conceived plan, is shown by the conference with Dr. Jones, the prepara-

tion of the papers, and then the relinquishment to the land, and then the pretended agreement about hotch-pot, for which defendants do not pretend to show the semblance of an authority. The answers were evidently drawn to create the impression that the other children had been advanced in slaves, and that plaintiffs in error had not; but it turns out that the sons had been advanced, each of a slave of greater value than the slave given to each daughter. This evasion is, of itself, sufficient to throw doubt on the answers.

As to the delivery of the deed, the answers themselves admit there was no delivery, and Parker, the subscribing witness, proves there was none, and the conduct of Wimbeck Boney, in reference to the estate, proves that he did not intend to pass the estate by deed. His remarks to Dr. Jones were no act of delivery ; they were merely a reference to what he had done, and not an act perfecting the deed. They were the mere expression of opinion as to the validity of the act; and it is evident his idea was that the deed would do to pass the estate after his death, probably not knowing that a will of real estate required three witnesses. Delivery is an act necessary to the perfection of a deed. It is conceded that a delivery may be good, though not made to the grantee. It may be to another for him, or it may be by some other act, such as placing the deed on a table, &c. And it is conceded that, when the act of delivery is once done, the immediate taking possession of the deed, and retention by the grantor, will not prevent its operation ; but if every case cited by plaintiffs in error be examined, it will appear that there was an act of delivery, although very loose language is employed by some of the judges in these cases.—2 Green. Ev. 297 ; Frisbie v. McCarty, 1 S. & P. 61, 64 ; 14 Ala. 131 ; 12 ib. 739 ; Moon v. Collins, 4 Dev. 384.

But suppose the deed was delivered, and of full effect. The consequence would be, that plaintiffs in error would have been thereby advanced, and they would have been constrained under our statute to have brought the value of the lands into hotch-pot, or received no farther portion of their father's estate ; and they say in their answers that, when the deeds were made, the land was worth more than when they answered. Dr. Jones' deposition shows, that decedent intended equality among his children. He wished his sons to have the land probably, but

"the law would do the balance"; and the law would equalize by the doctrine of hotch-pot, and there is nothing better known by the people at large, than the law of advancements and hotch-pot.

The representation made by plaintiffs in error to procure the release, &c., was, that the father said, "as to the residue of his property, not embraced in said deeds and not given off, the law would divide it," &c.; and afterwards the answers say plaintiffs in error made no other representations than as above set forth. The representation made was not only different, but the reverse of what decedent did say. The particularity with which they represented the decedent as speaking of the residue of his property, shows how cautiously they were guarding against the effect of an advancement, and shows that they were probably dealing with their sisters under advice of counsel.— Fraudulent representations were made, to prevent accounting for the value of the lands as an advancement; and Mrs. Hollingsworth's name was signed to the pretended agreement, and no authority whatever is shown for doing it.

Plaintiffs in error insist that the deed of their father was good, and upon that idea got the release. If so, they must account for the value of the lands as an advancement. The bill is framed to meet either aspect of the case; there is a general prayer. One or other of the grounds must prevail. The father's was a deed, or it was not. If it was, we recover under the law of hotch-pot; if it was not, the relinquishment was fraudulently obtained. Upon either ground, the decree accomplishes precisely the same thing.

GOLDTHWAITE, J.—The object of the bill is, to set aside a deed of relinquishment made by Kitty J. Hollingsworth to Wm. G. and R. C. Boney. This application is based upon allegations of fraud, consisting of false representations of material facts, and abuse of confidence reposed by Mrs. Hollingsworth in the grantees, who were her brothers.

It certainly requires no citation of authority to show that, if the deed which it was the object of the bill to annul was obtained by the false representations of the other party, and by false representations we mean those made with an intent to deceive, a court of equity would not hesitate to set it aside; and the power of that court to grant relief is equally clear, where

an innocent misrepresentation is made by one party through mistake of a material fact, constituting an inducement to the act of the other party, and in relation to a matter in which such party may fairly be presumed to trust to the representation of the other. If there is just reason to believe that the act has been done upon the faith of the representation, and that the party has been misled by it to his prejudice, however honestly the statement may have been made, it affords just ground for the interposition of chancery.—Story's Eq. § § 192, 193.

The ground upon which equity interferes in the last case, is, that the misrepresentation has operated to deceive, and it is therefore regarded as constructive fraud ; but we apprehend the jurisdiction in such cases might more properly rest on the ground of mistake.

There is also another, and a very comprehensive class of cases, in which equity looks to the peculiar situation which the parties occupy towards each other, and if one occupies a relation from which an unusual degree of confidence, affection, or sense of duty naturally springs, the utmost degree (*uberrima fides*) is demanded.— Story's Eq. § 218; and when this relation does exist, says Judge Story, courts of equity, acting upon this superinduced ground, in aid of general morals, will not suffer one party, standing in a situation of which he can avail himself against the other, to derive advantage from that circumstance ; for it is founded in a breach of confidence.—Story's Eq. § 308. If there is any misrepresentation of a material fact, or any just suspicion of artifice or undue influence, courts of equity will interpose and pronounce the transaction void, and as far as possible restore the parties to their original rights.—Story's Eq. § 218.

Again ; it is well settled, that, where the relations of attorney and client, guardian and ward, principal and agent, exist, the duty devolves upon the party in whom the trust is reposed, of showing that the contract is in every respect just, fair and equitable ; and the principle which we think deducible from the authorities, applies to all cases from which peculiar confidence or influence naturally results ; and where he who takes the gift, or makes the bargain, occupies this relation towards the other party, it lies upon him to prove his bargain, or, in other words, that he has dealt with the other party with the utmost good

faith, taking no advantage of his influence, but representing everything fairly.—Hunter v. Atkins, 3 M. & K. 113; McCormick v. Malin, 5 Black. 509.   Applying these principles to the case before us, there is no difficulty in arriving at a correct conclusion.

Winbeck Boney, who was the father of Mrs. Hollingsworth, and of Wm. G. and R. C. Boney, who were his only sons, some years before his death caused to be prepared a deed conveying to his sons in fee, in consideration of love and affection, the land which he then owned, and of which he subsequently died in possession.   To this deed he signs his name, affixes his seal, and causes it to be witnessed as signed, sealed and delivered; but instead of actually delivering it, he files it away amongst his papers, where it is found after his death.   When dying, he is advised by his physician of the necessity of making a final disposition of his worldly affairs.   He replies, "that he had made some deeds of gift; they were bunglingly done, but he reckoned they would answer, and the law would do the rest." After his death Wm. G. Boney administers upon his estate; a deed of relinquishment to the lands is prepared, to which the name of Mrs. Hollingsworth, who is a widow residing in the State of Louisiana, is signed by R. C. Boney, who resides in the same State; and subsequently, when Mrs. H. is on a visit to Alabama, she ratifies the same before a justice of the peace. It is not pretended that she received any pecuniary or valuable consideration, but it is conceded by the answers of both Wm. G. and R. C. Boney, that the deed was made by her for the purpose of carrying out the wishes of her deceased father, so that the sons should receive the lands absolutely and subject only to the dower of the widow of Winbeck Boney.   The answers are silent as to any advancements received by the brothers in the life-time of the deceased, but the evidence shows, that while Mrs. H. had received in that way a negro girl, the sons had each received a negro boy.

These are the material facts, and it is too clear for argument, that whatever may have been the intention of Winbeck Boney, in relation to the lands, his sons could take nothing under an instrument which had no validity as a deed for want of delivery, and none as a will for want of the necessary number of witnesses. They can claim under the deed of relinquishment alone; and

taking into consideration the position they occupy towards Mrs. Hollingsworth, we think that proof of the mere execution or ratification of the deed, so far as she is concerned, is not sufficient to sustain it. Until some inducement is shown, the law must always regard with suspicion an act by which a sister divests herself of a valuable interest in favor of a brother. There may be no fraud; everything may be honest and fair; but until the act is satisfactorily accounted for, the inference of fraud, artifice or abuse of confidence, is so strong, that we think equity should always relieve against it.

In the present case, the ties of affection and confidence resulting from the near relation of the parties, it is reasonable to suppose, were drawn closer by the recent bereavement common to both, and by the fact that the sister was a widow. Unless, therefore, a sufficient inducement is shown, the deed must be set aside as to Mrs. Hollingsworth.

How stands the case in this aspect? The answers of the brothers allege, that it was the intention of the father that they should have the lands at his death absolutely, subject only to the claim of the widow for dower; and if this was the case, and Mrs. H., for the purpose of carrying out the wishes of her deceased parent, without any artifice or abuse of confidence on the part of her brothers, thought proper to relinquish to them her interest in the lands, most certainly the deed must be supported.

But this is not the case made by the record. The language used by Winbeck Boney on his death-bed, as detailed by Dr Jones, the witness for the defendants below, is very different from the words which the answer alleges were spoken on that occasion. The expressions, as given by the witness, certainly leave it very doubtful as to what were the intentions of Winbeck Boney, as regards the disposition of the lands; and they should have been stated to Mrs. Hollingsworth as they were, so that she might resolve the doubt for herself. But instead of this, the answers create the impression on our mind that such representations were made, as would leave no doubt whatever on her mind, that the wishes of her father were as alleged in the answers.

Under these circumstances, the deed ought not to be sustained, and the decree of the Chancellor is affirmed; the defendants, W. G. and R. C. Boney, to be taxed with the costs of this court.