# Burke *v.* Taylor.

*Bill in Equity for Cancellation of Deed.*

1. *Cancellation of deed, as between principal and agent.*—A court of equity will set aside and cancel a deed by which the grantor conveys all of her property, of value at least $4,000, on the recited consideration of $250 in hand paid, and the grantee's undertaking to perform certain services, taking charge of the property, renting it out, collecting the rents and paying them over to the grantor during life, paying the taxes, keeping the property insured, &c.,—on evidence showing, as in this case, that the grantee was at the time acting as the grantor's agent in charge of the property; that the grantee was an old negro woman, above eighty years of age, feeble in mind and body, almost blind, and suffering from a surgical operation for the relief of her eyes; that the deed was prepared by an attorney, at the instance of

[Burke v. Taylor.]

the grantee, without consultation with the grantor, and was read over to her, but not explained, by the notary who took her acknowledgment of signature by mark; and that she had previously executed a will, which she never revoked, and by which she devised and bequeathed all of her property to a woman who lived with her, and whom she had raised from childhood.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 15th July, 1890, by Nancy Taylor against Michael Burke, and sought to set aside and cancel, on the ground of fraud and undue influence, a conveyance which the complainant had executed to the defendant, dated 7th June, 1888, and in the following words, omitting immaterial parts : "Know all men by these presents, that I, Nancy Taylor," "for and in consideration of the sum of $250 to me in hand paid by M. Burke, as trustee, the receipt whereof is hereby acknowledged, and in addition thereto the following services to be rendered by the said M. Burke for me, that is to say, the said Burke shall and will take charge and control of the following property," describing a lot and houses thereon in the city of Montgomery, "and shall rent out said property as in his judgment he may deem most advantageous, and shall pay over the rents to me as long as I live, and shall keep the property in good repair, shall pay all legal taxes assessed against it, shall keep the same insured, paying the premiums therefor, and, in case of the destruction, total or partial, of said house or houses by fire, shall, out of the insurance money, replace said house or houses, or so much thereof as may be necessary to produce the same rent that they have been bringing at the time of the destruction by fire, have granted, bargained and sold," &c. "to the said M. Burke, as trustee, the said parcel of land above described, and all the buildings and appurtenances thereon and thereunto belonging; to have and to hold unto the said M. Burke, his heirs and assigns, in fee simple forever, subject, however, to the interest during my life herein above shown, viz., to receive and have the rents, income and profits thereof; the said Burke also agreeing, as a part of the consideration on which this conveyance is made to him, to erect over my grave, after my death, a tombstone which shall be similar in all respects to the tombstone over the grave of my deceased husband, which stands in the cemetery of the city of Montgomery, Alabama. And I do covenant," &c., inserting full covenants of warranty.

On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant, ordering the cancellation of the deed, an account, &c., as prayed in the bill; and his decree is now assigned as error.

Moore & Finley, for appellant, cited *Miller v. Marx*, 55 Ala.
322; *Moog v. Strang*, 69 Ala. 98; *Shelton v. Aultman, Taylor
& Co.*, 82 Ala. 317.

Arrington & Graham, *contra*, cited ` Waddell v. Lanier*,
62 Ala. 347; *Shipman v. Furniss*, 69 Ala. 555; *Lyons v.
Campbell*, 88 Ala. 462; *Hill v. Barge*, 12 Ala. 687; *Huguenin
v. Basley*, 3 W. & T. Lead. Cases in Equity.

COLEMAN, J.—It is no part of the purpose of this opinion
to construe and declare the full legal effect of the instrument
in writing dated 7th day of June, A. D. 1888, the validity of
which is attacked in this suit. It is enough to say it purports
to convey in fee to the grantee, in trust, the property rights of
Nancy Taylor, the grantor, in all her real estate. It appears
that, besides the lot conveyed and improvements thereon, she
owned no other property except some furniture. The bill
charges that the execution of this instrument was procured by
fraud and undue influence.

The consideration expressed in this conveyance is two hun-
dred and fifty dollars paid by the grantee, and the assumption
on his part to superintend and control generally the property
of the grantor, to keep it in repair, to pay the taxes, and keep
the property insured, and to rebuild from the insurance money
in case of its destruction by fire the building, to collect the
rents, and pay them over to the grantor during her life. A
small tombstone was to be erected, also, after her death, which
the proof shows would not have cost exceeding ten dollars.

It is not pretended that the two hundred and fifty dollars
was paid by the grantee, or that its payment was in fact con-
templated by the parties. Mere inadequacy of price is not
sufficient to set aside a deed of conveyance, and when relied
upon alone, it must be so great as to shock the understanding,
and induce the belief that the transaction was fraudulent.
Any person possessed of reasonably good faculties and under-
standing, has the right to fix the price of his own property,
and part with it on such terms as he may see proper, in the
free exercise of his judgment and will. A mere voluntary
consideration is sufficient to sustain a deed.—*Davidson v.
Little*, 60 Am. Dec. 82. Gross inadequacy of consideration,
when coupled with other facts strongly tending to show fraud
or undue advantage, is a suspicious circumstance.

In the case of *Waddell v. Lanier*, 62 Ala. 349, it is said:
"All transactions between trustee and *cestui que* trust, guar-
dian and ward, attorney and client, principal and agent, parent
and child, are narrowly watched and jealously scrutinized in

courts of equity. In all the variety of the relations of life, in which confidence is reposed and accepted, and dominion may be exercised by one person over another, the court will interfere, and relieve against contracts or conveyances, when they would abstain from granting relief if no particular relation existed between the parties, in which trust and confidence was reposed and accepted, and there was not an opportunity for an abuse of the confidence and the exercise of undue influence.

. . The relation of principal and agent is affected by the same consideration which influences the court in dealing with transactions between persons standing in other fiduciary relations. . . It is certain that agents are not permitted to become secret vendors or purchasers of property which they are authorized to buy or sell for their principals, or, by abusing their confidence, to acquire *unreasonable gifts or advantages; or to deal validly with their principals in any case, except when there is the most entire good faith, and a full disclosure of all the facts and circumstances, and an absence of all undue influence, advantage or imposition."* Citing 1 Story's Equity, § 315. In all such cases, the burden rests on the party claiming under the deed, to prove satisfactorily that it is just, fair and equitable in every respect, and not on the party seeking to avoid it to establish that it is fraudulent.

The same doctrine is laid down as to the burden of proof in such cases, in *Shipman v. Furniss*, 69 Ala. 562, and again in its full force in *Lyons v. Campbell*, 88 Ala. 469, and reaffirmed in *Otis v. Bancroft*, 91 Ala. 279, so far as it applies to transactions *inter vivos*.

In 62 Ala. *supra*, it is further said, that feebleness of intellect, or its diminution or infirmity from age, disease, or other cause, would be a circumstance of importance, if the inquiry was directed to the existence of actual fraud, but where fiduciary relations exist, or that of principal and agent, it is not essential that the donor be of unsound mind, or of feeble or impaired intellect. Many authorities might be cited to sustain the proposition, that where there is weakness of mind, arising from old age, sickness, intemperance, or other cause, and plain inadequacy of consideration, connected with circumstances of undue advantage, a contract made under such circumstances will be set aside in equity.—*Tracy v. Sachet*, 1st Ohio State, 54; 59 Amer. Dec. 612, and cases cited.

The deed was read over to the grantor once, but without explanation, and she affixed her signature by making her mark. The grantee, Michael Burke, is a white man of extensive and varied business experience. Nancy Taylor, the grantor, was a negro woman, and at the time of the execution

[Burke v. Taylor.]

of the paper was about eighty years of age, and in feeble health. The instrument was prepared by an attorney at the instance of Burke, and as directed by him, in the absence of the grantor. The evidence shows that the grantor had no children, but she had taken into her care Mary Williams when only six months old; that Mary Williams was now thirty-four years old, and they had lived together during all of that time; that they spoke and regarded each other as mother and daughter, and that by her will made before the execution of the instrument of conveyance, and which had never been altered or revoked, the grantor had devised all her property to Mary Williams; that the conveyance to the grantee was procured by the grantee during a time when Mary Williams was absent. These important facts are fairly sustained by the evidence, and we do not think it necessary to point out and comment on many circumstances proven which tend to weaken the testimony of the appellant.

It is fairly proven that, at the time the instrument was exe-ted, the relation of principal and agent existed; that the consideration is grossly inadequate; that the grantor was old, infirm, in feeble health, and suffering great pain, and confined to her bed, in consequence of an operation which had been performed on her eyes. The testimony of Dr. Baldwin is, that he performed the operation in 1888, and that she was suffering a great deal, and that she was confined to her bed for some time afterwards; that she was physically feeble at the time of the operation, had but little vision, and that was out of but one eye. The notary public, James Jackson, testified that he did not know the condition of her mind at the time she signed the instrument, but that she was not capable of carrying on any business then.

The lot of land, at the lowest valuation, was worth four thousand dollars, and a part of it was rented to tenants. The evidence shows that the grantor had known the grantee but a short time, and that she had employed him as her agent to rent out her property, and to collect her rents, and to perform the duties of a real estate agent for her in regard to her property. His own account shows he was acting in some capacity for her as early as May 18th, 1888. She had employed him to sell her furniture at auction, which it seems was very valuable, and which the proof shows he appropriated to his own use, without her knowledge, and without a sale.

We do not think it necessary to say in regard to the facts proven, as the court did in *King v. Cohorn*, 6 Yerger, p. 75, reported in 27 Amer. Dec., where the facts in many respects were very similar, "that no woman in her circumstances, if in

her senses and not under a delusion, would make such a contract; and it may confidently be asserted that no honest or fair man would have accepted it;" but we do hold that the facts amply show that she is entitled to relief.

The decree of the court below is affirmed.