# McQueen v. Wilson *et al.*

### *Contest of Will.*

1. *Undue influence; presumption of; confidential relations; preparation of will by beneficiary.*—In regard to wills, the existence of confidential relations alone between the testatrix and the beneficiary under the will is not enough to raise up

[McQueen v. Wilson *et al.*]

in law a presumption of undue influence. But when in addition to the confidential relations, it is shown that the person who is a large beneficiary under the will actively participated in its preparation by making suggestions as to the disposition of the property, the presumption of undue influence arises.

2. *Same; burden of proof rebutting the presumption.*—Where in the preparation of a will it is shown that there existed confidential relations between the testatrix and the beneficiary, and that the beneficiary assisted in its preparation by making suggestions as to the disposition of the property, there arises in law a presumption of undue influence; and then, the burden of proof rests upon the party claiming the benefit under the transaction to repel the presumption thus created by the law by showing a severence of the relation, and this must be done by interposition of competent and independent advice.

3. *Same; what evidence not sufficient.*—In such a case, it is not sufficient to show that the sister of deceased carefully read the will over to deceased, that deceased agreed to all of its terms, and summoned witnesses to her room to attest her signature.

APPEAL from the Probate Court of Montgomery.

Heard before the Hon. J. B. GASTON.

This case arose on the offering for probate by Stewart McQueen, as executor, a paper alleged to be the last will and testament of Julia Wilson, which was contested by J. J. Woodward, guardian *ad litem* for Mary R. Wilson, a *non compos mentis*, and Eleanor Wilson, a minor, who were a sister and a niece, respectively, of the deceased. There were several grounds of contest set up by the contestant, but it is necessary to consider here only that of undue influence.

The evidence showed that the deceased had long entertained a desire to leave her property, on her death, to benevolent purposes. Deceased was a parishioner of the Protestant Episcopal Church of the Holy Comforter, of which church Stewart McQueen, named as executor and beneficiary, in the alleged will, was rector, and as rector made visits to the home of the deceased, before and during her last sickness. During the last sickness of the deceased McQueen had a conversation with her, when she told him that she desired to leave her property for benevolent purposes, and that she desired him

to serve as executor. He consented to serve as executor on the condition that he would not be required to give bond. He conferred with deceased in reference to disposing of her property by will for benevolent purposes, and after these conferences deceased had her sister to write down her instructions for a will to be made, which were sent, at the request of the deceased, to proponent. After this proponent, on a visit to deceased, received verbal instructions, which, together with the written instructions, he submitted to a lawyer of deceased's choice, who wrote the will and delivered it to proponent. Proponent, in turn, sent it to the sister of the deceased, who read it over to deceased. Deceased then signed the instrument, and called in persons who witnessed it.

The will named the proponent as the sole executor without bond, and then provided that after the payment of deceased's debts all of her property should be vested in Stewart McQueen, as rector, and T. Gardner Foster and Claude C. Cobbs, as wardens of the Church of The Holy Comforter, or their successors in office as such rector and wardens, in fee simple to be disposed of as a majority of them might think best.

Deceased desired to vest the property in proponent alone, but at his request the wardens were added.

The contest proceedings in the probate court resulted in a decree for the contestant. Proponent appeals, and assigns as error the rendering of that decree.

GORDON MCDONALD and JOHN D. MCNEEL, for appellant, cited *Lyons v. Campbell*, 88 Ala. 462; *Daniel v. Hill*, 52 Ala. 430; *Hill v. Barge*, 12 Ala. 687; 1 Williams on Exrs., 91; 1 Jarman on Wills, 42, 45; *Butlin v. Barry*, 6 Eng. Ecc. 166; *Crispell v. Dubois*, 4 Barb. 393; *Downey v. Murphy*, 2 Div. and B., 82; *Patton v. Allson*, 7 Hump. 320; Williams on Exec., 542, Chap. 1, § 2; *Bulger v. Rass*, 98 Ala. 267; *Tyler v. Gardner*, 35 N. Y. 594; *Re Eiler's Will*, 29 N. Y. 58; *Herster v. Herster*, 122 Pa. 239; *Mackall v. Mackall*, 135 U. S. 167; *Knox v. Knox*, 95 Ala. 495; *Eastis v. Montgomery*, 93 Ala. 293; *Johnston v. Armstrong*, 97 Ala. 731.

[McQueen v. Wilson et al.]

GUNTER & GUNTER and J. J. WOODWARD, contra, cited
Two Leading Cases in Equity, part 2, p. 573; Bancroft
v. Otis, 91 Ala. 290; 81 Ala. 290; Morgan v. Minette,
L. R. 6 Ch. D. 638; Noble v. Moses, 81 Ala. 530; Dala-
field v. Parish, 25 N. Y. 9; Tyler v. Gardner, 35 N. Y.
577; O'Hara v. Dudley, 95 N. Y. 120; Williams v. Pear-
son, 38 Ala. 299; 2 Perry on Trusts, § 703; Morris v.
Bishop of Durham, 10 Ves. 522; Doe v. Copestakes, 6
East 328; 2 Pomeroy's Eq., § 951; Kyle v. Perdue, 95
Ala. 585; Hugenin v. Baseley, Lead. Cases in Eq., Vol.
2, p. 1165; Rhodes v. Bates, L. R. 1 Ch. Ap. Cases, 252;
Savery v. King, 5 H. of L. 627; Ford v. Henessy, 70 Mo.
570; Bacon v. Ransom, 139 Mass. 117; Caspan v.
Church, 12 Mo. App. 293; Allore v. Jewell, 94 U. S.
506; Richards v. Donner, 72 Cal. 207; Johnson v. John-
son, 5 Ala. 540; Archer v. Hudson, 7 Beav. 551; Espy
v. Lake, 10 Hare 260.

. DOWDELL, J.—The present appeal is prosecuted
from the probate court of Montgomery county upon a
trial in the contest of a will. The appellant, Stewart
McQueen, the proponent in the court below, was named
in the alleged will as the sole executor. The contest
was filed by the guardian ad litem of the minor heirs
of the deceased, and among the grounds of contest it
was averred, "that said decedent was induced to make
and execute said alleged will by undue influence," and
upon this ground the whole contention is based.

The rule of law is well settled that in transactions
inter vivos, where a party stands in confidential rela-
tions to another, such as that of parent and child, guar-
dian and ward, attorney and client, priest and penitent,
etc., if the dominant party receives the benefit or do-
nation during the existence of such relation, the party
reposing the confidence, on seasonable application to a
court of equity, may obtain relief from the burdens and
duties imposed simply by showing the transaction and
the confidential relation; the presumption of the law
being that as long as the relation lasts the transaction
is the result of undue influence, and to make the trans-
action good in law there must be a severance of such
relation, at least for the time being, and the party re-

posing the confidence must have competent and independent advice. In such cases the burden of proof rests upon the party claiming the benefit under the transaction to repel the presumption thus created by the law by showing a severance of the relation, and this must be done by the interposition of competent and independent advice. And it is no answer to say that the party making the donation knew the effect of it, or that he approved the transaction, if the confidential relation be not severed by independent advice by some disinterested, competent person. These principles are based upon public policy, and the law would not even notice the mere denials of persons that undue influence were exerted; nor will it stop to consider the motives or promptings, whether good or bad, moral or immoral, which induced the exercise of such undue influence, for the reason that where such conditions obtain, the will, properly speaking, is not the will of the person so influenced. These principles are well sustained by the following authorities: *Noble v. Moses,* 81 Ala. 540; *Johnson v. Johnson,* 5 Ala. 90; *Hugenin v. Baseley,* 2 Leading cases Equity, Part 2, p. 1165; *Rhodes v. Bate,* L. R. 1 Chan. App. Cases, 252; *Savary v. King,* 5 House of Lords Cases, 267; *Morgan v. Minett,* Law Rep. 6 Chanc. Div. 638.

There is, however, a difference in the law of presumed undue influence in testamentary dispositions of property from that in transactions *inter vivos.* In regard to wills, confidential relations alone between the testator and the beneficary under the will is not enough to raise up in law a prespmution of undue influence. Testamentary dispositions of property are most commonly prompted by love and affection, and where these sentiments obtain, confidential relations most usually exist. But when in addition to confidential relations, it is shown that the person, who is a large beneficiary under the will, actively participated in its preparation by making suggestions as to the disposition of the property, the presumption of undue influence arises, and the same doctrine, as to the burden of proof and of rebutting the presumption by showing a severance of the relation by independent and competent advice, obtains

as in transactions *inter vivos* when confidential relations are shown. This question was thoroughly considered and discussed in the case of *Bancroft v. Otis,* 91 Ala. 279, where the authorities are collated and cited.

The case at bar comes directly within the influence of the principles declared in that case. Here, on the undisputed evidence, it is shown that the proponent actively participated by suggestions made to the testatrix in the preparation of the alleged will. It is also shown that he is a large beneficiary under the will, and the confidential relations were those of rector and parishioner, priest and penitent, coupled with the facts that he was a constant visitor at the home of testatrix prior to and during her sickness which terminated in her death, and that she reposed great confidence in him. These facts when taken by themselves, under the above authorities, are conclusive upon the proposition of the invalidity of the alleged will. It remains only to be determined whether the presumption of undue influence, which the law has raised up, under the above statement of facts, has been sufficiently met and repelled by any evidence in the case showing a severance of the confidential relations existing at the time of the making of the will. The only evidence in this respect is to be found in the testimony of Miss Clatonia Wilson, the sister of the deceased, and is as follows: "That she (witness) carefully read the same (the will) over, line by line, section by section, to and with the deceased, and that she, deceased, assented and agreed to all of its terms, subsequently getting witness to get the persons who attested the same as witnesses to come to deceased's room and attest her signature to such paper as her will." There is nothing in this evidence showing that any advice was given or offered by the witness to her sister—nothing more than that they two carefully read the paper over together; and in the next place, it is not shown that this witness was a competent person to give advice. This falls far short of the requirement of the law in discharging the burden of proof cast on the proponent to repel the presumption of undue influence which the law raises up on the other facts shown. This testimony shows no more than that

the deceased was informed of the contents of the paper, but knowledge of the contents and that she assented and agreed to the same is insufficient to repel the imputation that she was acting under the dominant spirit and controlling influence of the proponent, who was her priest and spiritual adviser.—*Morgan v. Minett, supra; Delafield v. Parish,* 25 N. Y. 9; *Tyler v. Gardner,* 35 N. Y. 595.

On the undisputed evidence our conclusion is that the trial court committed no error in rejecting the paper as the last will and testament of the deceased, and the judgment of the court is affirmed.

Affirmed.