45 So.2d 314

## MILLINER v. GRANT.

### 8 Div. 482.

Supreme Court of Alabama.
March 30, 1950.

Ralph H. Ford and Griffin, Ford, Caldwell & Ford, of Huntsville, and Joe M. Dawson and Brown, Scott & Dawson, of Scottsboro, for appellant.

Proctor & Snodgrass, of Scottsboro, for appellee.

LIVINGSTON, Justice.

This suit was instituted to cancel, set aside and hold for naught a deed alleged to be the product or result of the "undue or dominating" influence of respondent upon complainant. We take it that, as here used, "undue" and "dominating" mean one and the same thing. The cause was tried in the court below on the depositions of witnesses, and there is no presumption here in favor of the finding of that court on the evidence.

The parties are sisters. At the time the deed was executed and delivered the appel-

lant and grantor in the deed was approximately 22 years old and the and the appellee and grantee was approximately 30 years of age.

The property in question, a farm, was inherited in the year 1930 by descent cast from the father of the parties to this proceeding. On December 27, 1941, the appellant executed and delivered to the appellee a deed conveying her undivided one-half interest in and to the farm inherited from the father. The recited consideration was $5,000 to be paid in 25 equal payments over a peroid of 25 years, and secured by a mortgage on the property, the unpaid balance to bear interest at the rate of four percent per annum. This mortgage was executed and delivered to appellant and payment made in accordance therewith until this suit was instituted on, to wit, December 23, 1946. The appellant is of a low order of mentality and has twice (once in 1936 and again in 1942) been an inmate of Bryce Hospital, an Alabama state hospital for the mentally deficient at Tuscaloosa. But the validity of the deed in question has not been attacked on the ground that appellant was mentally incompetent to make it. A short time before this suit was brought appellant married one Milliner, a man some 25 years older than she. Appellee's testimony was to the effect that Milliner was the instigator of this suit and the moving spirit behind its prosecution: that her sister did not want the suit brought and did not testify in the case, although she was well and able to attend court.

Every phase of the law applicable to the facts of the instant case is stated in the case of Floyd v. Green, 238 Ala. 42, 188 So. 867, 869, as follows:

"In Walling v. Thomas et al., 133 Ala. 426, 430, 31 So. 982, 983, the authorities are collected to the effect that, 'A conveyance of lands, obtained for a grossly inadequate consideration, by unfair advantage taken of great mental weakness, though not amounting to absolute incapacity, of the grantor, will, in equity, be set aside, on equitable terms, when application therefor is made seasonably by the grantor, his representatives or heirs.' Wad-

dell v. Lanier, 62 Ala. [347] 349; Shipman v. Furniss, 69 Ala. [555] 562, 44 Am. Rep. 528; Burke v. Taylor, 94 Ala. 530, 10 So. 129; Allore v. Jewell, 94 U.S. 506, 24 L.Ed. 260; Harding v. Handy, 11 Wheat. 103, 125, 24 U.S. 103, 6 L.Ed. 429; Raymond v. Wathen, 142 Ind. 367, 41 N.E. 815; 18 Enc. Pl. & Prac. 765, 771. In such case, the deed, being voidable only, and not wholly void, passes title to the grantee, and the heirs' claim to relief rests not on legal succession to the title, but on an equitable right to be invested with such succession. The relief appropriate to be afforded by the courts is by enforcing rescission of the contract of sale, and cancellation of the deed.'

"To like effect are the recent decisions in this court and in other jurisdictions. Kirby v. Arnold, 191 Ala. 263, 68 So. 17; Pool v. Menefee, 205 Ala. 531, 88 So. 654; Strickland v. Strickland, 206 Ala. 452, 90 So. 345; L.R.A.1916D, 388, note; 2 A.L.R. 432-note; 2 A.L.R. 449, note.

"As to just what constitutes undue influence depends on the facts and circumstances of each individual case. Pilcher v. Surles, 202 Ala. 643, 81 So. 585; Barkley v. Boyd, 211 Ala. 50, 99 So. 196.

"There are certain principles that are established, illustrated and well stated as follows:

"In the case of Hutcheson v. Bibb et al., etc., 142 Ala. 586, 38 So. 754, it is declared:

"'* * * "Undue influence with respect to gifts and conveyances inter vivos is a very different matter. It may exist without either coercion or fraud. It may result entirely from the confidential relation, without activity in the direction of either coercion or fraud, on the part of the beneficiary occupying the position of dominant influence. It is upon him not only to abstain from deceit and duress, but to affirmatively guard the interests of the weaker party, so that their dealing may be upon a plane of equality and at arm's length. To presume undue influence in such a case, therefore, is not to presume fraud or coercion, or any act which is malum in se, but simply the continuance

of the influence which naturally inheres in and attaches to the relation itself." The doctrine is that, in addition to the relations between the testator and the beneficiary under the will, in order to put the burden of upholding the validity of the will upon the beneficiary, when assailed on the ground of undue influence, there must be some evidence of coercion in its execution, or, in other words, that the will is not the will of the testator. This may be done by showing that the person who is the principal or a large beneficiary under the will actively participated in the preparation or execution of the will. McQueen v. Wilson, 131 Ala. 606, 31 So. 94.

" 'The rule in such cases is based upon grounds of public policy, and was never intended to deprive one of the right of a voluntary and untrammeled disposition of his own property, but rather to guard and protect that right. It is in effect a rule of evidence, putting upon the dominant party in confidential relations, claiming a benefit under the transaction, the burden and duty of rebutting and overcoming the prima facie case so made by the presumptions which the law raises. * * *.'

"This rule has long prevailed. Justice Goldthwaite said in Boney et al. v. Hollingsworth et al., 23 Ala. 690, 698 and 700, that,

" 'There is also another, and a very comprehensive class of cases, in which equity looks to the peculiar situation which the parties occupy towards each other, and if one occupies a relation from which an unusual degree of confidence, affection, or sense of duty naturally springs, the utmost degree (uberrima fides) is demanded—Story's Eq. § 218; and when this relation does exist, says Judge Story, courts of equity acting upon this superinduced ground, in aid of general morals, will not suffer one party, standing in a situation of which he can avail himself against the other, to derive advantage from that circumstance; for it is founded in a breach of confidence.—Story's Eq. § 308.

" ' * * * taking into consideration the position they occupy towards Mrs. Hollingsworth, we think that proof of the mere execution or ratification of the deed,

so far as she is concerned, is not sufficient to sustain it. Until some inducement is shown, the law must always regard with suspicion an act by which a sister divests herself of a valuable interest in favor of a brother. There may be no fraud; everything may be honest and fair; but until the act is satisfactorily accounted for, the inference of fraud, artifice or abuse of confidence, is so strong, that we think equity should always relieve against it.

" 'In the present case, the ties of affection and confidence resulting from the near relation of the parties, it is reasonable to suppose, were drawn closer by the recent bereavement common to both, and by the fact that the sister was a widow. Unless, therefore, a sufficient inducement is shown, the deed must be set aside as to Mrs. Hollingsworth.'

"The more recent declaration by this Court in Dowe v. Farley et al., 206 Ala. 421, 423, 90 So. 291, 293, is: 'That the son was the dominant party under the evidence in this cause cannot admit of doubt. The burden was upon him to show the transaction was fair, just, and equitable in every respect. It needs no discussion to disclose that this burden has not been discharged. This feature of the decree is therefore free from error.'

"In Kyle v. Perdue, 95 Ala. 579, 585, 588, 10 So. 103, 104, Mr. Justice Walker, for the Court declared:

" 'There are well-established rules to be applied in passing upon transactions between persons whose relations are such as to suggest that in dealing between them confidence is reposed and accepted to such an extent that one of them is subject to the influence or ascendency of the other. When such a relationship is shown to exist, if the one who was in a position to exert the influence claims the benefit of a contract with the person bestowing the confidence, the burden is cast upon the former to show affirmatively that the influence of his position was not unduly exerted; that the utmost good faith was exercised; and that all was fair, open, voluntary, and well understood. This rule as to the burden of proof is of familiar ap-

plication to contracts by which benefits are conferred by a cestui que trust upon his trustee, by a ward upon his guardian, by a child upon his parent, by a client upon his attorney, by a patient upon his physician, or by any one upon his priest or spiritual advisor. Noble's Adm'r v. Moses, 81 Ala. 530, 1 So. 217 (60 Am.Rep. 175); Dickinson v. Bradford, 59 Ala. 581 (31 Am.Rep. 23); Malone v. Kelley, 54 Ala. 532; Boney v. Hollingsworth, 23 Ala. 690; Johnson v. Johnson, 5 Ala. (90) 94; Marx v. McGlynn, 88 N.Y. 357; Huguenin v. Baseley, 2 White & T. Lead. Cas. 1156. The relations here mentioned are but instances in which the principle is applicable. It is not essential that any formal or technical relationship of a fiduciary character has been established between the parties. It sufficed that they stand in such a relation to each other that, while it continues, confidence is justifiably reposed by one, and the influence which naturally grows out of that confidence is possessed by the other. * * *

" 'The testimony of the grantees themselves shows that the grantor never intended to make such a disposition of her property as is embodied in the instrument which she signed. In view of the relations of trust and confidence existing between the parties, and of the evident reliance by the grantor on the false assurances of one of the grantees, an instrument, the provisions of which fall so far short of the grantor's understanding of its operation in her favor, cannot prevail against her impeachment of it. The result is that, accepting the version of the transaction as detailed by the parties who assert its validity, it must, upon their own statements, be pronounced invalid. It is therefore unnecessary to pass upon the conflicts in the testimony upon the issue as to Mrs. Perdue's mental competency at the time she signed the instrument.'

■ "We may further observe that there are other principles of law governing the case that may be touched upon as follows: It is not necessary to have fiduciary relations in order to have what the law defines as 'confidential relations.' In addition to fiduciary relations, this Court has long held that confidential relations arise in cases 'in which confidence is reposed and accepted, or influence acquired,' and also in 'all the variety of relations in which dominion may be exercised by one person over another.' Such conditions of confidential relations are defined in many cases from this jurisdiction. Worsham v. Johnson, 231 Ala. 265, 164 So. 381 and authorities there cited; Cox v. Parker, 212 Ala. 35, 101 So. 657; Harraway v. Harraway et al., 136 Ala. 499, 34 So. 836; Kyle et al. v. Perdue et al., 95 Ala. 579, 10 So. 103; Holt v. Agnew et al., 67 Ala. 360; Malone v. Kelley, 54 Ala. 532.

"For example, it has been declared that confidential relations exist between brother and sister, sister and sister, and mother and son. Boney et al. v. Hollingsworth et al., 23 Ala. 690 (between brother and sister); Hutcheson v. Bibb et al., 142 Ala. 586, 38 So. 754 (between sisters); Dowe v. Farley et al., 206 Ala. 421, 90 So. 291 (between mother and son); Gibbons et al. v. Gibbons, 205 Ala. 636, 88 So. 833 (between mother and son).

■ "From the foregoing authorities and citations, where confidential relations exist, the burden of proving that the transaction was fair, free from undue influence, fraud or deceit or misrepresentations, and in the case of deeds the grantor, had disinterested, independent and competent advice, is cast upon the beneficiary in such confidential relation. Burke v. Taylor, 94 Ala. 530, 10 So. 129; Worsham v. Johnson, 231 Ala. 265, 164 So. 381; Dowe v. Farley, supra; Gibbons v. Gibbons, supra; Verner et al. v. Mosely, 221 Ala. 36, 127 So. 527; McQueen v. Wilson et al., 131 Ala. 606, 31 So. 94.

"In Verner v. Mosely, 221 Ala. 36, 42, 127 So. 527, 532, the rule of the case of McQueen v. Wilson et al., supra, is again produced, and the conclusion in the Verner case is well stated, as follows: 'To repeat, in cases such as this: "The burden rests on the party claiming under the deed, to prove satisfactorily that it is just, fair and equitable in every respect, and not on

480

the party seeking to avoid it to establish that it is fraudulent." Spiva et al. v. Boyd (206 Ala. 536, 90 So. 289, 290); Burke v. Taylor, 94 Ala. 530, 10 So. 129.' "

We have no doubt but that a confidential relationship existed between appellant and appellee and, further, that appellee was the dominant party in that relationship. The only question is, whether appellee met the burden of proving that the transaction was just, fair and equitable in every respect, and that appellant had disinterested, independent and competent advice. We think, as did the trial court, that she has met that burden.

In the first place, we are to the conclusion that the price agreed upon between the parties was fully adequate. True, the evidence as to value was conflicting and, as usual in such cases, the opinions of the witnesses covered a wide range, influenced no doubt by the general rise in property values since 1941.

We are further of the opinion that the time and manner of paying the agreed purchase price was to the best interest of the appellant. We are also fully persuaded that Mr. Nathan Sanders, the uncle of the parties to the suit, and the former guardian of appellant, and who looked after the farm and other property of appellant and appellee for a number of years, and who seems to have done a very creditable job for his nieces, gave to appellant competent disinterested and independent advice in respect to the sale of her interest in the farm to her sister. Having handled the farm for several years and having paid off a mortgage on it, he was in a position to know its value. Sanders testified that the price paid was all that appellant's interest was worth.

Appellant's failure to testify to any feature of the case lends some credence to appellee's testimony that she was not the instigator of the suit. But we forego further discussion.

Affirmed.

BROWN, SIMPSON and STAKELY, JJ., concur.