On Application for Rehearing

BRYAN, Judge.
On application for rehearing, A.J. Brown (“A.J.”) argues that, because we affirmed the judgment in favor of Emily Brown (“Emily”) with regard to her undue-influence claim in the present case in the absence of any evidence indicating undue activity on A.J.’s part in procuring the execution of the July 21, 2006, deeds by R.B. Brown (“R.B.”), our decision in the present case conflicts with our decision in Murphy v. Motherway, 66 So.3d 770 (Ala.Civ.App.2010). According to A.J., our decision affirming the trial court’s judgment in the absence of any evidence indicating that A.J. took any undue action to procure the execution of the deeds conflicts with our holding in Murphy v. Motherway because:
“The plaintiff in Murphy v. Motherway challenged both inter vivos and testamentary instruments of conveyance from his mother [sic] to his sister. In upholding the transfers, this Court held as follows:
“‘There was evidence indicating that Louise was involved in the opening of the bank accounts in M.C.’s and Louise’s names with a right of surviv-orship; however, there was no evidence indicating that she was doing anything other than complying with the voluntary directions of M.C. In order to establish the undue-activity element of an undue-influence claim, there must be interference by the allegedly dominant party “and such interference must go beyond mere compliance with the voluntary directions of the testator.” [emphasis added] (66 So.3d [at] 739 [779])’
“Citing Furrow v. Helton, 13 So.3d [350], [359] (Ala.2008) and Hall v. Hall, 502 So.2d 712, 714 (Ala.1987).”
A.J.’s Brief in Support of Application for Rehearing at p. 5.
In Murphy v. Motherway, Joe Murphy (“Joe”) claimed that his sister, Louise Motherway (“Louise”), had procured the execution of a will (“the 2002 will”) by M.C. Murphy (“M.C.”), who was Joe’s and Louise’s father, by undue influence. Joe also claimed that Louise had procured M.C.’s execution of a correction deed (“the 2002 correction deed”) and M.C.’s placement of funds in accounts in his name and Louise’s name with a survivorship clause (“the placement of funds in accounts”) by undue influence. Thus, Joe claimed undue influence with respect to (1) a testamentary transfer of property, i.e., the 2002 will, and (2) two inter vivos transfers of property, i.e., the 2002 correction deed and the placement of funds in accounts.
In order to establish a prima facie case of undue influence with regard to a testamentary transfer of property, the party challenging the transfer must introduce substantial evidence establishing:
“ ‘(1) that a confidential relationship existed between a favored beneficiary and the testator; (2) that the influence of or for the beneficiary was dominant and controlling in that relationship; and (3) that there was undue activity on the pari of the dominant pariy in procuring the execution of the will.’ ”
Furrow v. Helton, 13 So.3d 350, 353-54 (Ala.2008) (quoting Clifton v. Clifton, 529 *729 So.2d 980, 983 (Ala.1988)) (emphasis added).
However, in Chandler v. Chandler, 514 So.2d 1307 (Ala.1987), the supreme court stated:
“This Court in an early case contrasted the standard for showing undue influence in the procurement of testamentary transfers with the standard for showing undue influence in the procurement of inter vivos transfers. In pertinent part, the Court stated:
“ ‘Undue influence with respect to gifts and conveyances inter vivos is a very different matter. It may exist without either coercion or fraud. It may result entirely from the confidential relation, without activity in the direction of either coercion or fraud, on the part of the beneficiary occupying the position of dominant influence. It is upon him not only to abstain from deceit and duress, but to affirmatively guard the interests of the weaker party, so that their dealing may be upon a plane of equality and at arm’s length. To presume undue influence in such a case, therefore, is not to presume fraud or coercion, or any act which is malum in se, but simply the continuance of the influence which naturally inheres in and attaches to the relation itself’
“Bancroft v. Otis, 91 Ala. 279, 290, 8 So. 286, 289 (1890). This statement was quoted in Hutcheson v. Bibb, 142 Ala. 586[, 588], 38 So. 754[, 754] (1904), and has been carried forward from that case. See, e.g., Milliner v. Grant, [253 Ala. 475, 477-78, 45 So.2d 314, 316 (1950) ]; Floyd v. Green, 238 Ala. 42, [46,] 188 So. 867[, 869] (1939).”
514 So.2d at 1308 (emphasis added); accord Nelson v. Buckley, 567 So.2d 855, 856 (Ala.1990); and Beinlich v. Campbell, 567 So.2d 852, 853-54 (Ala.1990).
In Murphy v. Motherway, we affirmed the judgment of the trial court finding that Joe had failed to establish a prima facie case of undue influence not only with respect to the testamentary transfer but also with respect to the inter vivos transfers. Explaining our rationale, we stated:
“There is no dispute that Louise had a confidential relationship with M.C. and was a favored beneficiary under the 2002 will. However, Joe did not introduce substantial evidence indicating that Louise’s influence was dominant and controlling in her relationship with M.C. or that she engaged in undue activity in procuring the execution of the 2002 will, the execution of the 2002 correction deed conveying the Brent home to her alone, or M.C.’s placement of funds in accounts in his name and Louise’s name with a survivorship clause. Our supreme court ‘has consistently held that the fact that a person is a favored beneficiary and is in a confidential relationship with the testator does not alone raise a presumption that the will was executed by undue influence.’ Hall v. Hall, 502 So.2d 712, 714 (Ala.1987). Every witness who knew M.C., including Joe, testified that M.C. was a strong-willed person. No witness testified that he or she saw any sign that Louise had imposed her will on M.C. Aside from the fact that the execution of the 2002 will, the execution of the 2002 correction deed, and the opening of the bank accounts in M.C.’s and Louise’s names with a right of survivorship favored Louise, there is no evidence whatsoever indicating that her influence was dominant in her relationship with M.C., and, as noted previously, the mere fact that the execution of the 2002 will, the execution of the 2002 correction deed, and the opening of the bank accounts in M.C.’s and Louise’s names with a right of sur-vivorship favored Louise does not raise *730 a presumption that they were procured by undue influence. See Hall v. Hall.
“Moreover, there is no evidence indicating that Louise engaged in any undue activity to procure the execution of the 2002 will, the execution of the 2002 correction deed, or the opening of the bank accounts in M.C.’s and Louise’s names with a right of survivorship. M.C. had a prior relationship with Mike Murphy before Mike Murphy prepared the 2002 will and the 2002 correction deed — Mike Murphy had prepared the 1991 will. Louise, on the other hand, had no prior relationship with Mike Murphy. Although Louise accompanied M.C. on some of his visits to Mike Murphy’s office to discuss the 2002 will, she did not accompany him on all the visits. Mike Murphy testified that M.C. stated what terms he wanted in the 2002 will and that he saw no evidence indicating that Louise was imposing her will on M.C. Mike Murphy testified that M.C. had stated that he wanted the 2002 correction deed, that Mike Murphy had advised M.C. to ask Joe to quitclaim his interest in the Brent home instead of executing the correction deed, and that M.C. had not wanted to ask Joe to quitclaim his interest in the Brent home. There is no evidence indicating that Louise was involved in procuring the preparation or execution' of the 2002 correction deed. There was evidence indicating that Louise was involved in the opening of the bank accounts in M.C.’s and Louise’s names with a right of sur-vivorship; however, there was no evidence indicating that she was doing anything other than complying with the voluntary directions of M.C. In order to establish the undue-activity element of an undue-influence claim, there must be interference by the allegedly dominant party ‘ “and such interference must go beyond mere compliance with the voluntary directions of the testator. ” ’ Furrow, 13 So.3d [350] at 359 [ (Ala.2008) ] (quoting Hall, 502 So.2d at 714). Accordingly, we affirm the judgment of the trial court.”
66 So.3d at 778-79 (emphasis added).
With respect to the inter vivos transfers at issue in Murphy v. Motherway, i.e., the execution of the 2002 correction deed and the placement of funds in accounts, the judgment of the trial court was due to be affirmed because, as stated in the excerpt from our opinion quoted above, “Joe did not introduce substantial evidence indicating that Louise’s influence was dominant and controlling in her relationship with M.C.” Id. at 778. See Chandler v. Chandler. With respect to those inter vi-vos transfers, Joe was not required to introduce substantial evidence indicating that Louise had engaged in undue activity in procuring them. Id. Therefore, the language we have emphasized in the quoted excerpt from our opinion in Murphy v. Motherway was dicta. Because the language in Murphy v. Motherway upon which A.J. bases his argument that our decision in the present case conflicts with our decision in Murphy v. Motherway was dicta, we find no merit in that argument.
In our opinion on original submission in the present case, which involves only inter vivos transfers, we recited the evidence that was before the trial court that was sufficient to reasonably satisfy the trial court that the dominance of R.B., as the parent in his relationship with A.J., “ ‘ha[d] not merely ceased, but ha[d] been displaced by subservience to [A.J.].’ ” Wilson v. Wehunt, 631 So.2d 991, 993 (Ala.1994) (quoting Hawthorne v. Jenkins, 182 Ala. 255, 260, 62 So. 505, 506 (1913)). That evidence was sufficient to create a presumption of undue influence with regard to the inter vivos transfers at issue in the present case and to shift the burden to A.J. to prove that those transfers were *731 “ ‘fair, just, and equitable in every respect.’ ” Chandler v. Chandler, 514 So.2d at 1308 (quoting Brothers v. Moore, 349 So.2d 1107, 1109 (Ala.1977)). Emily was not required to introduce evidence indicating that A. J. had engaged in undue activity in procuring the execution of the July 21, 2006, deeds in order to establish a presumption of undue influence in the present case because the present case involves only inter vivos transfers. See Chandler v. Chandler, Nelson v. Buckley, and Beinlich v. Campbell.
APPLICATION OVERRULED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.