## BALKUM vs. BREARE.

[BILL IN EQUITY FOR ACCOUNT.]

1. *Fraud; to what equity will look in determining.*—Equity will not only regard the nature of the bargain, but also the sex and circumstances of the parties to it, when the controversy involves a question of fraud. A widow woman in feeble health, with a family of children in helpless poverty, will not be treated as the equal in a business transaction with a well informed, influential and prosperous merchant.

2. *Account; when will be decreed.*—Mrs. B., a widow in feeble health, with a family to provide for, in extreme and distressing poverty, earned $446 in the year 1867 as a teacher in a public school in this State, for which she filed her account in a proper manner with the superintendent of the public schools of the proper county, but the payment of the claim thus filed was postponed and not made until April, 1870. Before it was paid, B., an influential and well informed merchant of the county, came to see her for the purpose of buying her claim. He represented to her that all the other teachers of the schools were selling their claims at fifty cents in the dollar; that the money to pay her claim had not been received by the superintendent, and might not be received in some months. Confiding in the truth of these representations, she sold her claim for fifty cents in the dollar, and received her pay. Shortly afterwards, she learned that B.'s representations were all false, and that he had deceived and cheated her, and that the money to pay her had been received and that B. had opportunities to know it.

She went to him and proposed to cancel the trade for her claim and tendered him back the money he had paid, but he refused to do this, and collected her claim and applied the funds to his own use,—*Held,* chancery had jurisdiction, and would compel B., the merchant, to account to the widow for the proceeds of her claim so gotten possession of by him.

APPEAL from Chancery Court of Henry and Dale. Heard before Hon. B. B. McCRAW.

The facts are sufficiently stated in the opinion.

OATES & COWAN, for appellant.—1. The demurrer to bill for want of equity should have been sustained. 1st. because fraud alone is not sufficient to confer jurisdiction on a court of chancery. "No matter how gross the fraud may be, if the party can have full, complete and adequate redress at law, he can not go into a court of equity."—*Knotts v. Tarver,* 8 Ala. 743.

The action "for money had and received" affords a full and adequate remedy at law for this alleged wrong.—*Sadler et al. v. Robinson's Heirs,* 2 Stew. 620; *Russell v. Little,* 28 Ala. 160. The bill has not equity as a bill of discovery, because there is no disclosure sought of "deeds or writings, or other things in defendant's custody, possession or power," and because there is no disclosure sought of any fact resting solely in the knowledge of defendant, unless the alleged knowledge on his part of the reception by the county superintendent of the school funds, may be so considered. But even a knowledge by the defendant of this fact can not aid the complainant's cause; for it was an extrinsic fact, the suppression of which from the knowledge of complainant, did not constitute fraud.—1 Story's Eq. Jur. §§ 208–213. It was a fact which the defendant was under no legal or equitable obligation to communicate to complainant. Its suppression was not such an undue concealment as amounted to fraud in the sense of a court of equity, and for which it will grant relief. The definition of such undue concealment, or *suppressio veri,* as will avoid a contract, is laid down in Story's Eq. Jur. § 207, to be the

"non-disclosure of those facts and circumstances which one party is under some legal or equitable obligation to communicate to the other; and which the latter has a right, not merely *in foro conscientive*, but *juris et de jure*, to know." See *Laidlow v. Organ*, 2 Wheat. 178.

The demurrer should have been sustained—2d, because, in the fourth paragraph of said bill is an admission which shows that complainant entered into new stipulations with defendant concerning the alleged fraudulent transaction, after she became possessed of a full knowledge of all the attendant circumstances; and such being the case, a party can not claim a rescission of a contract for fraud after entering into new stipulations concerning it.—2 Stewart, 520; 14 Ala. 9; 1 Story's Eq. Jur. § 203; *Parsons v. Hughes*, 9 Paige, 591; 7 Smedes & Marshall, 544; 2 Ves. sr. 126; 9 Ves. 364; Fonbl. Eq. 129, note *r*.

M. A. BELL, *contra*.

PETERS, J.—This is a bill in equity, filed by Mrs. Breare, the appellee, against Balkum, the appellant, to compel him to account to her for a certain balance of the proceeds of a certain claim in her favor, against the superintendent of the public schools in the county of Henry in this State, which said Balkum had gotten from her by fraud, falsehood and overreaching her, and collected. On the hearing in the court below, there was a decree in favor of the complainant, Mrs. Breare, in conformity with the prayer of her bill. From this decree the respondent, said Balkum, appeals to this court, and here assigns the following errors:

1. "The chancery court erred in overruling the demurrer of appellant.

2. "The chancery court also erred in rendering a decree against the appellant, as shown in the record."

The main allegations of the bill may be condensed in substance as follows: The complainant, Mrs. Breare, a regularly employed teacher of one of the public schools in

the county of Henry in this State, during the year 1867, earned the sum of $446 as a teacher of such public school, and properly filed with the superintendent of the public schools in said county her account for the same. · She was a widow, with a family of children, and extremely poor and necessitous; so much so, that she had taught the school allotted to her "upon bread alone for her food, except as her neighbors had furnished her with messes of meat." That the payment of her claim had been delayed until in April, 1870, when Balkum came to her house with the "express purpose of overreaching and defrauding her," and proposed to buy her claim for fifty cents in the dollar. She was then in feeble health and extremely poor and necessitous, and he was a person of such standing and superior information that she placed the utmost confidence in the representations made by him. He then represented to her that the teachers were all selling their claims; that it would cost her one hundred dollars to get her account made out again; that the school money had not been received by the superintendent; that he did not know when the money would come, and that it would be at least three or four months before she would get her money. Upon these representations she transferred her account to said Balkum for fifty cents in the dollar, about one half it was worth. Shortly afterwards she learned that these representations were all false, and that at the time they were made and said transfer had been effected, sufficient funds had been received by the superintendent of said public schools in said county for the payment of her claim, to-wit: about the sum of $5,100, which was known to Balkum. And on the discovery of the cheat, she informed him of her dissatisfaction; and feeling that she had been cheated she proposed to take twenty dollars in addition to what had been paid, but this was refused, and ten dollars more was paid her. She then tendered him back his money paid to her and offered to rescind the contract of assignment, which was refused by Balkum. Balkum, under his possession derived as aforesaid, held on to the claim and col-

lected it, and appropriated the proceeds to his own use; by which the complainant had lost $211, which she had unwillingly surrendered.

The bill made proper parties defendant and prayed appropriate relief. A demurrer for want of equity was overruled.

A demurrer to the bill for want of equity admits the truth of all the facts stated with reasonable certainty.—Story's Eq. Pl. § 452. The bill alleges that the complainant confided in the statements of the respondent, and that he was a person in whom she had reason to confide; that by his false assertions she had been overreached and defrauded of the sum of $211, and which sum she had been forced by his unconscientious conduct unwillingly to surrender to him. This is a sufficient allegation of a fraud, particularly where the defrauded party is a female, oppressed with extreme poverty and the cares of a family of helpless children. Courts of equity have wisely refrained from laying down any general definition of fraud, as remediable in that court. Fraud is said to be infinite, and if the jurisdiction is once hampered by prescribed limits, it will be perpetually eluded by new schemes which the fertility of man's invention would create.—1 Story Eq. §§ 186, 187, 188, 189, and cases cited. Besides, fraud may be presumed from the condition and circumstances of the parties contracting.—*Chesterfield v. Jansen*, 2 Ves. 155–6; *Boney v. Hollingsworth*, 23 Ala. 690. If the bargain be such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other, it is liable to be denounced as inequitable and unconscientious, and held void both at law and in equity. 2 Ves. 155–6, *supra;* 1 Story Eq. §§ 189–90. In this case the court can not shut its eyes to the fact that the complainant is a widow, in feeble health and extremely indigent, burdened with the support of a family of children dependent upon her, as she intimates in her bill, in very "distressing circumstances." Such a person, so situated, in a christian country, stripped of all political power for

her protection, timid and weak by nature in the physical force necessary for her defense, and without any standing in the high places of justice to influence the interpretation of the laws in her favor, is entitled to expect in every male citizen she meets a guardian and a truthful friend. In her isolation and weakness, this is necessary for her just protection. These circumstances can not be left out of view in this case. Mrs. Breare was not in a condition to deal with Balkum on equal terms. He used his superior opportunities to deceive her, and the bill alleges that this deception was accomplished by falsehood, greatly to his profit and to her loss. In other words, he sold his deceptions at a high price, and forced her to pay it, very much against her wishes. I know no principle of equity to invoke in sanction of such a transaction. I therefore think the bill is not without equity, and that the demurrer was properly overruled.

The second assignment of error upon the decree in the court below is also without sufficient support. It is true, that the answer of Balkum flatly denies many, if not all, of the material allegations of the bill. But the evidence of Mrs. Breare and Miss McKay overturns these denials of the answer, and sustains the bill. Besides, the testimony of Kincey makes a much stronger case than that made in the bill; and it also sustains, in some important particulars, the complainant's case. From Kincey's evidence, it may be fairly inferred that Balkum knew that the funds to pay Mrs. Breare's account had been received by the superintendent, before he applied to purchase the claim, and that such funds had been deposited with Kimbrough & Co., of which Balkum was a partner, before the purchase. If this was really so, it might happen that he paid Mrs. Breare for her claim with her own funds, at half price. Such a transaction could not be sustained in equity. The partnership of Kimbrough & Co., of which appellant was a member, by accepting the deposit of the school funds in their house, made themselves trustees, in equity at least, to hold it for the use of the beneficiaries, of whom Mrs. Breare was one,

This forbid their use of it for their own profit, or for the profit of any member of the firm, without the consent of the beneficiaries.

But, however this might have been, the decree of the court below is in conformity with good conscience and the clear preponderance of the proof. It is therefore affirmed at the appellant's costs in this court and in the court below.