# Abercrombie *v.* Carpenter, *et al.*

### *Bill to Have Deed Declared a Mortgage.*

(Decided April 17, 1907.   43 So. Rep. 746.)

1. *Equity; Pleading; Bill; Multifariousness.*—A bill to have a deed declared a mortgage is not multifarious because it shows that the title to one of the lots was in one complainant and the title to the other lot in another complainant, where it was shown by the bill that both lots were bought with the joint money of all; that the property was occupied by all complainants, the title being taken that way by agreement and that the deed sought to be declared a mortgage was signed by all complainants jointly.

2. *Mortgage; Deed as Mortgage; Fraud.*—Where it appeared that the persons signing the deed were ignorant, the principal one being old and unable to read writing although he could read printing, and sign his name, without having the deed read over to either of them, they being told it was a mortgage; that the grantee was intelligent and his attorney sent the deed to the granors without explanation of its nature, and that the grantors thereafter made improvements and paid the taxes on the land, they were entitled to redeem the land and to have the deed declared a mortgage upon learning that the instrument was a deed.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Bill by Andrew Carpenter and others against J. W. Abercrombie. From a decree for complainants, defendant appeals. Affirmed.

FRED S. BALL, for appellant.—Counsel discusses assignments of error but cites no authority.

HILL, HILL & WHITING, for appellee.—No brief came to the Reporter.

SIMPSON, J.—The original bill in this case was filed by the appellees against the appellant, praying specially

[Abercrombie v. Carpenter, et al.]

to have a certain deed executed by said appellees to appellant declared a mortgage, and for general relief.

The first point made by the appellant is that the bill is multifarious, because it is shown that the legal title to one of the lots is in one of the complainants (Andrew Carpenter), and that of the other in the other two complainants (Louisa and Mary Lee Carpenter). The allegations of the bill show that both lots were bought with the joint money of all the complainants, the titles taken by agreement as above indicated, that the property was occupied by all of the complainants as a homestead, and that the deed, which it is sought to have declared a mortgage, was signed by all jointly. The bill is not multifarious.—*Randle Adm'r. v. Boyd*, 73 Ala. 282, 288; *Bolman v. Lohman*, 74 Ala. 507, 510; *Howard et al. v. Corey*, 126 Ala. 283, 289, 290, 28 South. 682.

On the facts of the case, and under the general prayer of the bill, the city court decreed that the complainant is entitled to redeem the land. We concur with the reasoning of the judge of the city court. The evidence shows that the complainants were ignorant colored people, the principal one being "well stricken in years," and though he could read printing and could sign his name, yet he could not read writing. It also shows that the deed which was signed by the complainants was never read to either of them, and that the defendant was a man of intelligence, and that his attorney wrote the deed and sent it to the complainants for execution, without any explanation as to its nature. It is also shown that the complainants had just learned that they had been deceived by one of their own color, who had taken a deed, when they thought they were making a mortgage, and turned to the defendant, because they had known him for a long time, and thought he would treat them "all right." It is also shown that the complainants have made improvements on the property and have paid the taxes. The complainants swear that they were told that they were signing a mortgage, and thought they were merely paying interest on it, until they had agreed on a sale of the property to another party (which party also testifies

to the negotiations for a sale), and, when they went to defendant to inquire what they owed him, learned for the first time that he had a deed and claimed to be owner of the property; and they are corroborated by the testimony of a granddaughter. The defendant and his attorney deny that they ever told complainants, or either of them, that they were signing a mortgage; but they do not say that the paper was read to them, or that any definite explanation was made to them, of the nature of the instrument which they were signing.

The crowning glory of courts of equity is to protect the weak and ignorant from imposition by the strong and intelligent, and while it is true that certain relations of life have been definitely pointed out as raising a presumption of confidence and dependence, yet the general principle is that when one who is strong and well-informed deals with one who is ignorant, weak, and occupying a position of dependence or subordination, the stronger should exercise that uberrima fides in his dealings which leaves no trace of imposition. Mr. Pomeroy says: "When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative."—2 Pomeroy's Eq. Jur. (3d Ed.) pp. 1670, 1671, § 928. See, also, *Kloepping v. Stellmacher*, 21 N. J. Eq. 328, 331; *Balkum v. Breare*, 48 Ala. 75, 79; *Burke v. Taylor*, 94 Ala. 530, 533, 10 South. 129. While the witnesses differ as to the value of the property, yet, taking all of the testimony into consideration, we think it was worth double the amount paid for it.

The decree of the court is affirmed.

TYSON, C. J., and HARALSON and DENSON, JJ., concur.