# Yarbrough, *et al. v.* Harris.

*Bill to Set Aside Deed and for Partition and Distribution.*

(Decided Feb. 10, 1910.    Rehearing denied June 30, 1910.    52 South. 916.)

1. *Deeds; Validity; Burden of Proof; Fairness.*—Where the action was to set aside a deed and it was shown that the grantee was an intelligent business man, and the grantor a negro woman, ignorant of business and of the extent and value of her interest in the property conveyed and the grantee went to her attorney to negotiate the sale, and the consideration was much less than the value of the property, the burden of proof was on the grantee to show that the transaction was fair.

2. *Same; Validity; Overreaching.*—Where an intelligent business man, together with an attorney, went to a negro woman and together, negotiated the purchase from her of her property, the value and extent of her interest therein of which she was ignorant, and secured a full warranty deed therefor, for the false recited consideration of $250.00, when in fact she was paid only $25.00. and the property was worth between $1,000.00 and $1,250.00, and the attorney, though not shown to have advised her to sell, lent

[Yarbrough, et al. v. Harris.]

her the money to go with them to the place where the property was ·
situated, in order to negotiate the sale, the deed is fraudulent and
will be set aside.

APPEAL from Limestone Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Anna Harris against W. T. Yarbrough and others to set aside a deed as fraudulent, and for partition and distribution. Decree for plaintiff and defendant appeals. Affirmed.

W. R. WALKER, for appellant. Only where inadequacy of consideration is such as to demonstrate such gross imposition or undue influence, or to shock the conscience, ought equity to interfere, and that only when such amounts in itself to conclusive and decisive evidence of fraud.—*Juzan v. Toulmin,* 9 Ala. 682; 684-6; *Saltonstall v. Gordon,* 33 Ala. 149, 153-4, and authorities cited; *Wood v. Craft,* 85 Ala. 260; *Cleere v. Cleere,* 82 Ala. 581; *Graffan v. Burgess,* 117 U. S. 380, 29 L. Ed. 839, 843-4; 2 Pomeroy Equity Jurisprudence, Section 927; *Harris v. Tyson,* 64 Am. Decis. 661; *Davidson v. Little,* 22 Pa. St. 225; 60 Am. Dec. 81 and note; Pomeroy Specific Performance Contract 2nd. Ed. 193. "Where no fiduciary relation exists between the parties, and they are of legal capacity, however improvident or disadvantageous the contract may appear, though marked by folly or indiscretion, it must stand until the party seeking to escape its obligation clearly proves that it was the result of fraud, mistake or surprise or undue influence practised upon it."—*Maben v. Kelly,* 54 Ala. 532, 538; *Judge v. Wilkins,* 19 Ala. 765; 2nd Pomeroy Equity Juris., § 926, and cases cited in notes: *Harris v. Tyson,* 64 Am. Decis. 661. Where a party seeks rescission of a contract on the ground of fraud he must show his right to relief by distinct and positive allegations

clearly proved.—*Bailey v. Litten,* 52 Ala. 282; *Juzan v. Toulmin,* 9 Ala. 662; *Lewis v. Pead,* 1 Beasley, Jr. 19. "Fraud is a fact which must be proved and courts will not strive to force conclusions of fraud."—*Crawford v. Kirksey,* 50 Ala. 590, 598; *Ala. Life Ins. & Trust Co. v. Petway,* 24 Ala. 544; *Smith's heirs v. Branch Bank,* 21 Ala. 125; *Steele v. Kinkle,* 3 Ala. 352, 358. Inadequacy of consideration is not even presumptive evidence of fraud unless the disparity is so great as to force the mind to conclude that the transaction must have been conceived or consumated with a fraudulent intent.—*Boezman v. Draughan,* 3rd Stewart 243, 245-6; *Wood v. Craft,* 85 Ala. 260; *Eaton v. Patterson,* 2nd Stewart and Porter, 919.

CALLAHAN & HARRIS, and H. C. THACH, for appellee. Inadequacy of consideration may be so gross as to furnish presumption of fraud.—*Cleere v. Cleere,* 82 Ala. 588. The deed misrepresents the transaction it recited as to the consideration on which it was executed, and is liable to suspicion.—*Dixon v. McLarney,* 97 Ala. 290. Under the facts in this case the burden is on the grantee to show that no undue advantage was taken.—*Ryan v. Price,* 106 Ala. 584; *Kyle v. Perdue,* 95 Ala. 579. Weakness of mind, old age, together with inadequacy of consideration, is sufficient to set aside a deed.—*Burk v. Taylor,* 94 Ala. 530; *Tracey v. Sakett,* 1 Ohio St. Rep. 54.

MAYFIELD, J.—The bill in this case was filed primarily to set aside a deed of conveyance to a tract of land of 25 acres, and personal property to the amount of several hundred dollars, and incidentally to sell the lands for partition and distribution.

The property involved belonged originally to an old negro man named Temp Harris. He died January 26,

[Yarbrough, et al. v. Harris.]

1906, leaving a widow, Ann Harris, the complainant, and two or more children, two of whom lived with him upon the land (which was located in Limestone county, near Athens) at the time of his death. His wife had not lived with him for about 10 years prior to his death, but lived in Morgan county, at Decatur. All the property owned by Temp at the time of his death was less than that exempt, and, he dying intestate, it therefore vested in his wife alone, if all his children were of full age; but, if they were not, then in his wife and minor children jointly.

The evidence is in dispute as to whether or not two of these children were of full age.

The respondent desired to purchase the property soon after Temp's death, and inquired of one W. H. Turrentine, an attorney at law, as to the chance of purchasing it. Turrentine replied that he thought he could buy it. On the request of Yarbrough, Turrentine went with him to Decatur to purchase from the widow, and agreed with her to purchase all her interest in her husband's estate, at the price of $25. For some cause unexplained, though it is attempted to be explained, she accompanied or came on the same train with them from Decatur to Athens, and the deed was executed within a few minutes after their arrivel at Athens; Turrentine writing the deed, and Yarbrough going to get a mortgage which one Lerman held upon the property, which mortgage, on its face, was to secure $500—as alleged, in order to get the description of the property. The exact amount that was actually due on this mortgage is not shown. Probably it was about $250, though this is not at all certain.

The deed was an absolute conveyance of the property with full warranties and covenants of seisin and good right to convey and against incumbrances; and it is

shown that the widow had other property. Whether Turrentine represented the grantor, or the grantee, or both, as attorney in the matter, it does not clearly appear. In exactly what capacity he acted, or what he received, or was to receive, for his services, and to whom he looked for his compensation, is not certain.

A petition had been filed in the probate court of Limestone county to set aside this property to the widow, and it was so set aside to her. Turrentine acted as attorney in this matter, drawing all the papers, and even signing the name of the widow to the papers. The widow says she knew Mr. Turrentine was looking after it for her, but did not know what he had done. Friends, neighbors, and relatives of Yarbrough assisted Turrentine in having this property set aside to the widow. It is not certain, from all the evidence, whether Turrentine was representing Yarbrough or the widow in this matter. He claims to have represented the widow alone. The papers in these proceedings are in bad form, and the dates and other matters much confused. The petition and proceedings are so confused that it is made to appear from the face of the papers that the petition was filed in court before Temp died. The appointment of the commissioners, their report, the confirmation of the report, and all things else connected with it, are "Confusion worse confounded."

The property conveyed is estimated to be worth from $500 to $1,900. It was probably worth about $1,000 or $1,200, lands and personalty.

The children of Temp had a crop growing on the land when it was sold to Yarbrough by the widow. The proceeds of this crop were applied to the payment of the mortgage debt, and Yarbrough paid the balance, if any.

[Yarbrough, et al. v. Harris.]

The recited consideration of the deed was "$250.00 cash in hand paid"; but the true consideration paid to Ann was $25, and the balance of the mortgage debt, if any. Turrentine and Yarbrough both claim they did not know the exact amount due on the mortgage debt at the time of the sale, but thought it about $200 or $250. The widow is shown not to have known the amount or the value of the property or the extent of her interest in it.

If her attorney knew, he did not advise or instruct her in the matter; but, while professing to represent her, he allowed her to sell, and warrant the title to property worth at least $500, and probably $1,900, for $25.

The chancellor, on the final hearing on the bill, answer, and proof, granted the relief prayed, decreeing that the deed was fraudulent in law, and annulling it; and decreeing that two of the children were under 21 years of age at Temp's death, and that, therefore, they and the widow each acquired a one-third undivided interest in the property; and directing that it be sold for partition and division among them, and that reference be had, to ascertain the value of the property converted by the grantee, Yarbrough, and that he be charged with and held for the value thereof as so ascertained; and allowing an attorney's fee for services in the matter, dependent upon the amount received from the sale of the property, to ascertain the value of which the reference was ordered, and that such and other matters of reference be reported back to the next term of the court.

The respondent was an intelligent business man, of affairs. He knew the property purchased, knew its value, knew its owner, and knew she was old and ignorant not only of the quantity, quality, value, and extent of her own interest and ownership therein, but of every-

thing pertaining to the business. He desired to purchase the property, and for fear she would not sell to him he sought her attorney, and advised with him relative thereto; carried her own attorney to Decatur, to see her, knowing she would rely upon what her attorney advised her. True, he and her attorney say that the latter did not advise her thereto; but they admit that the attorney lent her the money wherewith to pay her expenses back to Athens, with them; and the attorney drafted the deed, which she signed before him, and which he attested, by which she conveyed $1,000 worth of property to the respondent for $25, and this deed recited a consideration of $250 to her in hand paid, which recital was shown to be false.

It is inconceivable that this transaction could be fair and free from undue influence. The parties to it were not by any means dealing on equal terms; on one side were two intelligent persons, and on the other was a poor old ignorant woman. If they had told her that it was best for her to accept $1 for the property, it conclusively appears from the evidence she would have done so.

Under the state of facts in this case, the burden of proof was upon the purchaser to show that the transaction was fair, just, and righteous. But, no matter upon whom rested the burden of proof, the transaction cannot stand. There is not a single fact to show that it was fair or just; but, to the contrary, every circumstance shows it to have been unfair and oppressive—oppressive of the ignorant, weak, and confiding, by the intelligent, strong, and dominating.—*Kidd v. Williams,* 132 Ala. 140, 31 South. 458, 56 L. R. A. 879; *Kyle v. Perdue,* 95 Ala. 579, 10 South. 103; *Shipman v. Furniss,* 69 Ala. 556, 44 Am. Rep. 528; *Bancroft v. Otis,* 91 Ala.

[Murphree v. Clisby.]

279, 8 South. 286, 24 Am. St. Rep. 904; *Cannon v. Gilmer*, 135 Ala. 305, 33 South. 659.

There is no doubt that the decree of the chancellor is correct and righteous, and it is by this court in all things affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.