# Richter, *et al. v.* Richter.

*Bill to Remove Estate from Probate to Chancery Court and for Other Relief.*

(Decided January 16, 1913. Rehearing denied February 6, 1913. 60 South. 880.)

1. *Executors and Administrators; Homestead; Surviving Widow; Testamentary Provisions.*—Exemptions of personalty and homestead in favor of the surviving wife are creations of the statute and cannot be altered or defeated by testamentary disposition.

2. *Same; Construction; Bequest to Widow.*—A bequest to a testator's wife of $400.00 "and no more and no less" does not purport to qualify or impair the wife's legal rights to the exemptions created by law.

3. *Same; Exemptions; Release; Validity.*—An agreement by a wife with her husband who has bequeathed her $400.00, no more and no less, which recites that the bequest is in settlement of her interest and which declares that she is satisfied with the provisions in the will and agrees to accept the $400.00 in full satisfaction and to take the same in installments or in a lump sum, at the option of the executors, is without consideration and not binding on her in so far as her exemptions created by law is concerned, and she may demand her legal exemptions notwithstanding.

4. *Same; Consideration.*—Where the testator has bequeathed his wife $400.00, no more and no less, and after his death she executed

[Richter, et al. v. Richter.]

a deed to the executors releasing her exemption rights in the estate in consideration of the payment of the bequest, the mere fact that the executors accelerated the payment of the bequest and borrowed money to satisfy it did not amount to a consideration for the release, as their act was but a voluntary one and their loss of interest on the sum borrowed was at most a gratuity.

5. *Same; Confidential Relations; Fraud; Burden of Proof.*—Under the facts in this case the children, to uphold the release, had the burden of proving that it was based on a fair and adequate consideration, free from undue influence and made under a competent appreciation of its effect on the widow's rights; the evidence considered and held to justify a finding that the deed executed by the widow whereby she released her exemption rights in her husband's estate was procured by fraud and undue influence.

6. *Same; Abandonment.*—A temporary absence from the state by a widow is not a relinquishment or waiver of her legal exemptions in her husband's estate.

7. *Fraud; Evidence.*—In determining the fact of fraud a comprehensive and comparative view of the related actions of parties to whom it is imputed is necessary.

APPEAL from Cullman Chancery Court.

Heard before Hon. WM. H. SIMPSON.

Bill by Sophia Richter against Herman Richter and another as executors of the estate of complainant's deceased husband to remove the estate from the probate to the chancery court and to carve out her exemptions. From a decree for complainant defendants appeal. Affirmed.

EYSTER & EYSTER and GEO. H. PARKER, for appellant. After discussing the evidence in the case appellants insist that it falls far short of discharging the burden cast upon complainant of proving the allegations of her bill and that the facts differentiate it from the case of *Nelson v. Brown,* 164 Ala. 397, under which the bill was evidently filed.—*Kyle v. Perdue,* 95 Ala. 583; *Hutchinson v. Bibb,* 142 Ala. 586. Mere inadequacy in consideration is not a sufficient ground for setting aside and annulling the contract.—*Stroup v. Austin,* 60 South. 879; *McLeod v. McLeod,* 145 Ala. 272, and cases cited. See also *Thornton v. Pickard,* 157 Ala. 306.

J. B. BROWN, for appellee. Under the undisputed evidence the agreement was not supported by a sufficient consideration and cannot be enforced in law or in equity.—*Richardson v. Fields,* 124 Ala. 536. At the time the deed was made the rights of the widow were in force and continued and she could neither sell them nor waive them.—*Mayer v. Taylor,* 69 Ala. 403; *Varnum v. The State,* 78 Ala. 30; *Grant v. Steiner,* 65. Ala. 499; *Paden v. Belinger,* 87 Ala. 575; 108 Mass. 247; Pomeroy's Eq. (2nd Ed.), 1372; Id. (3rd Ed.), 1740. On the question of fraud counsel cite *Kennedy v. Kennedy,* 2 Ala. 571; *Costly v. Allen,* 56 Ala. 198; *Comer v. Heidleback,* 109 Ala. 223. The presumption of undue influence arises as a matter of law and constitutes a constructive fraud.—*Nelson v. Brown,* 164 Ala. 396; *Couch v. Couch,* 148 Ala. 332; *Dolberry v. Dolberry,* 153 Ala. 434; *McQueen v. Wilson,* 131 Ala. 610. The burden was on the beneficiary.—*Noble v. Moses,* 81 Ala. 545; 34 L. R. A. 715.

McCLELLAN, J.—Sophia Richter is the widow of William Richter, Sr., who died August 24, 1909. That marriage was without issue. By a previous marriage he had eight children. These survived him and are his heirs at law. All were adults when Sophia Zitkov and Richter were married. The widow exhibited this bill against the appellants as executors of the probated will of William Richter, Sr., deceased, and against the eight heirs at law of the testator. Its theory and purpose was to remove the administration of the estate into the chancery court to enforce her alleged rights to personal and homestead exemptions in the estate left by the testator. The respondents assert that for a consideration she conveyed to the executors of the estate all such rights by a conveyance of date August 26, 1909. Her

reply is that such conveyance was and is fraudulent and void; that it was the product of a design or purpose to overreach or defraud her of the rights to which she was justly entitled as the widow of the testator.

After a very brief acquaintance, testator and Sophia Zitkov were married May 29, 1903. A number, if not all, of Richter's children resented the marriage. Some of them protested against the issuance of the license to them.

On the day of the marriage Richter executed a will in which he provided for Sophia Zitkov, with whom he, it was recited, would contract marriage that day, a legacy of $400, the like sum being given thereby to each of his children; and, further, that each of said legacies should be derived from the real estate of the testator. In that will he also provided that, after the payment of those nine legacies, the remainder of the estate should be equally divided between the eight children and Sophia Zitkov. In this will Asa B. Fuller was named as executor.

On June 1, 1907, Richter executed another will. This instrument, with a codicil thereto not now important to consider in particular, was later probated. In the second item thereof it is provided: "I give, devise and bequeath to my wife, Sophia Richter ($400.00), four hundred dollars, and no more, no less." By the third item it is provided that the proceeds of his property, real, personal, and mixed, should be equally divided between his eight children. Herman and Willie Richter were named, and are now, the executors of the estate. This will expressly revoked all former wills executed by the testator.

On November 5, 1907, approximately five months after the execution of the last-mentioned will, Sophia Richter affixed her signature, in the presence of two

attesting witnesses, to this instrument: "State of Ala-
bama, Cullman county.   This agreement witnesseth:
That whereas the will of Wm. Richter, Sr., bequeathed
the undersigned, Sophia Richter, as his wife, the sum
of four hundred dollars, in full satisfaction and settle-
ment of her interest in the estate of said Wm. Richter,
Sr.:  Now, the said Sophia Richter admits she is satis-
fied with said provision in said will, and agrees and
binds herself to take and accept the said four hundred
dollars in full satisfaction and settlement as aforesaid;
and agrees to take the sum upon the decease of said
Wm. Richter, Sr., in monthly payments of fifty dollars
each beginning on the first of the month after his de-
cease, or in a lump sum at the option of the executors
of said estate."

As stated above, Richter died August 24, 1909.  On
August 26, 1909, Sophia Richter affixed her signature
to a conveyance of *all* her interests and rights in and
to every character of property of the estate of her de-
ceased husband.   This instrument was formally ac-
knowledged before a notary public.   The consideration
recited is "four hundred dollars to me in hand paid by
Herman Richter and Willie Richter as the executors
of the estate of Wm. Richter, deceased."   The trans-
mission of title and rights is "to the said Herman
Richter and Willie Richter as executors of the estate
of William Richter, Sr., heirs, administrators and as-
signs."   This is also recited in the instrument: "And
the said payment of said four hundred dollars being in
full satisfaction of any legacy of said amount in the
will of said deceased, William Richter, Sr., and of all
and singular of any interest, claim or title in and to any
part of his said estate situated, lying and being in
Cullman county, state of Alabama."   The habendum is:
"To have and to hold unto them, the said executors, for

the benefit of said estate, and to their successors, and assigns, forever, in fee simple.   *   *   *  " Then follows the usual warranty of title and for quiet enjoyment.

It is impracticable and undesirable to attempt an exhaustive discussion in the opinion of the evidence, and inferences therefrom, upon the issues of fact this litigation presents. It will and must suffice to treat the matters of diverse contention in a general and not particular manner—thus, in the main, setting down conclusions attained after careful consideration of every part and element of the evidence.

From the positive evidence upon the issue of Sophia's mental capacity or qualification to deal with the rights affected by the instrument of November 5, 1907, and that of August 26, 1909, in connection with the persistently evinced concern several of the testator's children manifested that what she was to do, or did do, was *fully understood* and appreciated by her when considering or negotiating to the end those instruments sought to conclude—a concern apparently shared by the husband upon the occasion of the signature of the instrument of November 5, 1907—the conclusion must be that the woman possessed a very limited natural capacity or qualification to exercise a judgment that would enable her to preserve her own rights in opposition to the greatly superior capacities and training of those adversely interested. When to this status of inferiority there is added the facts of her foreign birth, of her little knowledge of the English language, and of her evident want of appreciation of the legal rights to which, as wife and widow, she was entitled, it is too clear to admit of doubt that in the contest to reduce or minimize her participation in the benefits of the estate of Richter—a contest pressed, if not instituted, by children of her husband whose bounty would enhance pari passu with the

diminution of her share of the estate—she was at least disadvantaged and markedly unequal.

From the evidence, in connection with the recitals of the papers of November 5, 1901, and August 26, 1909, it appears that those papers are to be read together as expressive of a purpose common to both. The former promised, as it were; the latter executed that promise, as it were. That of November 5, 1907, refers to the will of June 1, 1907. So the will of that date is evidently complementary to the later papers. The will of 1907, in so far as testamentary provision for Sophia is concerned, changes the testamentary purpose of the 1903 will by omitting Sophia from participation as one of the *nine* mentioned in the second item of the will of 1903. In both wills Sophia was given a legacy of $400, and this sum was paid to her on August 26, 1909. The testator thus manifested a change of purpose, as read from both his wills, with respect to bounty for his wife. Following the provision for this legacy in the will of 1907 are these words, "and no more, no less."

Exemptions of personalty and of homestead are not susceptible of being affected by testamentary disposition. They are creations of law and cannot be altered or defeated by testamentary provision.—*Hubbard v. Russell,* 73 Ala. 578; *Chandler v. Chandler,* 87 Ala. 300, 303, 6 South. 153; *Bell v. Bell,* 84 Ala. 64, 4 South. 189.

The quoted words signify only that the $400 legacy was the exact measure of the testator's bounty to his wife. They are not to be taken as importing a purpose to attempt to thereby qualify or impair the stated legal rights to exemptions assured by law to the widow. And it may be here noted that, when those words are interpreted as they must be, the recitals in the opening sentences of the paper of November 5, 1907, setting forth that said legacy should be or was "in full satis-

faction and settlement of her interest" in her husband's estate, were in opposition to the fact itself.

The instrument of November 5, 1907, was a nudum pactum, so far as exemptions were concerned. It rested on no consideration whatever. In point of fact, its premise was, as stated, untrue. The will's provision to which it had reference had then been executed months before. It does not appear from that will that the testator even attempted, when he made it, to have it operate against Sophia Richter's exemption rights in his estate. Such a purpose, if then entertained, would, as stated, have been wholly vain. The paper of November 5, 1907, was without legal effect or binding quality. There was nothing in it, or upon which it rested, to prevent the husband, had he so determined, to revoke that will and to omit testamentary provision for her. It did not, of course, become a part of the testator's will of 1907, or affect in any degree the testamentary disposition made by that instrument.

The deed of August 26, 1909, is rested for consideration upon the $400 paid to the widow by the executors. To that, after his death, she was absolutely entitled under the will of her husband. That the executors accelerated the premature payment of the legacy by borrowing the money to satisfy it was but a voluntary act on their part. They were under no obligation to do so. Their loss, if so, of interest on the sum thus borrowed, was, under the circumstances, at most a gratuity.

Willie Richter testified: "The $400 legacy under the will was the $400 we were paying her." Herman Richter testified: "The $400 that I gave her was her legacy under the will."

In determining the fact of fraud, a comprehensive and comparative view of the related actions of the parties to whom it is imputed is necessary.—*Snodgrass*

*v. Bank,* 25 Ala. 174, 60 Am. Dec. 505; *Nelms v. Steiner Bros.,* 113 Ala. 562, 573, 22 South. 435.

There is no doubt upon the record that the children of the testator regarded with aversion the relation and consequent rights which complainant's marriage with their father established. Indeed, one of them testified that he regarded her as an interloper; and later gave expression to the idea that the estate of the father was largely the result of the unrequited efforts and labors of his children, implying in his recital the notion that the advent of this wife should not, in justice, deflect, in any degree, the benefits of the estate from those who, without any real compensation, contributed to its creation.

The record shows, unmistakably, an entertained motive for, at least, a minimization of the wife's share of interest in the estate when the death of the father and husband had brought the occasion for its distribution. It shows that what was sought to be done through the deed, and its predecessor of November 5, 1907, accorded with this motive and expressed it in a way that excludes all doubt.

With the complainant's capacity existing, as it has been found as of fact, and with the stated unmistakable motive prevalent with those to whose advantage its effectuation would accrue, we may now take up the inquiry whether constructive fraud affected the result wrought by the deed of August 26, 1909.

At section 943 of 2 Pomeroy's Eq. Juris. it is said: "Second. Constructive Fraud Inferred from the Condition and Relations of the Immediate Parties to the Transaction.—This division embraces those cases in which a transaction, although it may be perfectly regular in its external form, and valid perhaps by the original rules of the common law, is impeachable in

[Richter, et al. v. Richter.]

equity because it lacks that absolute *consent* which is regarded as essential by courts of equity. The equitable conception of true consent assumes a physical power of the party, an intellectual and moral power, and that he exercise these powers freely and deliberately. While the execution of an instrument in the regular legal manner will undoubtedly, in the absence of all contrary evidence, raise a prima facie presumption that the consent was present, the real consent may be prevented or destroyed by surrounding physical circumstances, by the want of intellectual or moral capacity in the party himself, or by physical, intellectual, or moral force controlling the free operations of his own will. This phase of so-called constructive fraud necessarily involves a great variety of instances, and several degrees of invalidity. It includes transactions absolutely void from complete incapacity, others which are voidable, and others which are only presumptively invalid, and which throw the burden of proof upon the parties claiming their benefit to overcome this presumption. The whole subject is therefore separated into two branches: * * * (2) Transactions presumptively invalid between persons in fiduciary relations."

The paper of November 5, 1907, was executed in the presence of the testator. The testimony for the appellants is to the effect that the subject of the wife's relinquishment of all her rights in the husband's estate, for the legacy of $400, was frequently discussed, in the presence of some of the children, by the testator and the complainant. Al. Richter, one of the children, testified that he sent for the attorney who drew the paper of November 5, 1907. He further testified: "* * * And inasmuch as Mrs. Richter had agreed on $400, I wanted it stipulated in writing which was to convey her rights, dower, etc., in the property of father's." He

further testified : "She made this agreement with father to be satisfied with $400, and *that is why I had these papers executed. It was on my suggestion* that this deed was prepared by Mr. Parker (italics supplied). * * * He (the father) called her from the kitchen, and said, 'Sophia, go get the will.' She went and got the will and gave it to him, and he handed it to me."

Other evidence tends to show that the testator, whether of his own free volition or under some extraneous persuasion, sanctioned, if he did not affirmatively promote, the act of the wife in executing the paper of November 5, 1907. This paper, in substance, expressed, as has been before stated, the idea of relinquishment by the widow which the deed of August 26, 1909, undertook to completely effectuate.

Whatever the relation between the stepchildren and the stepmother, the relation between this husband and the wife was, of course, fiduciary; and from the whole evidence it must be concluded that the influence and effect of the husband's action (as appellants show it to have been), with respect to the agreement evidenced by the paper of November 5, 1907, was projected into the circumstances, and the event, culminating in the execution of the deed of August 26, 1909. The two acts, viz., the execution of the paper of November 5, 1907, and that of the deed of August 26, 1909, though the latter was subsequent to the husband's demise, being so related—as cause to effect, as sound to echo—the freedom of the latter from vitiating fraud must be determined by recourse to the rule before quoted from Pomeroy; must be adjudicated with reference to the fraud imputed, prima facie, where the relations of confidence existed to embarrass, if not to destroy, the free exercise of sober judgment by the confiding party. The acts and influence of the husband and father, in pro-

ducing the execution of the papers mentioned, must be treated as collaborating and coinciding with the acts, inspired as stated, by those who were to profit by the relinquishment by the wife and by the widow of her exemption rights. In these circumstances the burden of proof rested upon those asserting rights under the deed to show that the conveyance, by the weaker vessel, was on a fair and adequate consideration; was free from undue influence; was done with a competent appreciation of its effect upon her rights.—*Noble v. Moses*, 81 Ala. 530, 1 South. 217, 60 Am. Rep. 175; *Couch v. Couch*, 148 Ala. 332, 42 South. 624; *McLeod v. McLeod*, 145 Ala. 269, 40 South. 414, 117 Am. St. Rep. 41.

The estate, consisting mainly of real estate, left by the testator, may be taken at a value of approximately $10,000. The testator did not occupy a homestead at the time of his death. Normally, his widow's exemption rights would have comprehended $1,000 as exemptions of personal property the household and kitchen furniture, etc., and $2,000 *in lieu* of the homestead exemptions.—Code, §§ 4197, 4199, 4200. And for the purposes of the argument, though not here in practical question, note may be taken of the fact that, if the conveyance was effective, it divested her of dower, to the extent of one-third for her life, in the real estate owned by the testator at the time of his death.

When it is considered, omitting, even, the factor of asserted relinquishment of her dower, that for a legacy of only $400 the complainant was to surrender at least seven times its value in exemptions assured, to her in widowhood, by the law, and so under circumstances that have been indicated, the conclusion on this record is unescapable that, whatever appellants contend was the effort to inform her of the comparative magnitude of the surrender they, and the father and husband in

life, desired her to make, she at no time appreciated the dignity and comparative magnitude of her rights as the wife or widow of Richter, nor was she so informed as to equip her to really negotiate for, or *consent to,* a transaction that would exact of her a relinquishment so out of all proportion to the meager sum she was to receive. The difference in value between that she was to surrender and that she was to receive in its stead is so disproportionate as to demonstrate a gross inadequacy of consideration, if any real consideration is assumed to underlie the relinquishment she was making.

Where the circumstances and the transaction itself discover a bargaining of the nature and result shown here—a bargaining that no one undeluded or not densely ignorant would for a moment entertain, and no fair, just man would accept—equity will avoid it, for it would be unconscionable that the product of such a wrong should survive.—*Balkum v. Breare,* 48 Ala. 75, 79; *Abercrombie v. Carpenter,* 150 Ala. 294, 43 South. 746.

The evidence, for the appellants, upon the issue of what was done to acquaint the complainant with her rights and the effect of her acts in executing the paper of November 5, 1907, and the deed only two days after the testator's death, is conflicting in material particulars. Through it all, however, may be traced the insistent purpose to effect what these papers manifest on their faces. Her view consists with what her own acts strongly evidence, viz., a simple-minded ignorance of what her rights in fact were and of the effect thereon of the execution of the paper and the deed.

Under the whole evidence, in connection with the potent, illuminating fact the transaction itself discloses, the conviction prevails that the conclusion attained by the chancellor is correct; and the deed of August 26,

1909, must be pronounced void and its cancelation accomplished.

The insistence that by leaving Cullman, shortly after the testator's death, the complainant relinquished or waived the exemption rights to which she lays claim, is without merit.—*Chamboredon v. Fayet,* 176 Ala 217, 57 South. 846. Anyway, her absence from Alabama was temporary (*Stroup v. Austin, infra.,* 60 South. 879), and, pending an application for a rehearing, is without any particular bearing upon the issues casting the result on this appeal.

The decree appealed from is affirmed.

Affirmed.

DOWDELL, C. J., and SAYRE and SOMERVILLE, JJ., concur.