[Kirby v. Arnold.]

# Kirby *v.* Arnold.

*Bill to Annul a Deed for Fraud, and for Undue
Influence.*

(Decided February 11, 1915.   68 South. 17.)

1. *Deeds; Validity; Evidence; Sufficiency.*—The evidence examined
and held to show that the consideration was inadequate and that the
grantor did not intend to convey the parcel claimed although told that
a conveyance of a strip of land was necessary to save her grandfather
from imprisonment.

2. *Same.*—Where land was obtained by fraud for an inadequate
consideration a court of equity will set aside the transaction.

APPEAL from DeKalb Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Lucy Arnold against A. Collins Kirby to set
aside and annul a deed on the grounds of fraud and
duress and inadequacy of consideration.   Decree for
complainant and respondent appeals.   Affirmed.

HUNT & WOLFES, for appellant.

DAVIS & POPE, for appellee.

THOMAS, J.—The bill was filed by complainant to
annul an absolute conveyance of interest in certain lots
in Collinsville, DeKalb county, Ala., upon the grounds
that the conveyance was obtained by fraud and duress,
and that the consideration paid for the alleged pur-
chase by the appellant was so grossly inadequate as
to stamp the transaction as fraudulent.

The appellee was an ignorant negro woman, known
by the name of Lucy Arnold or Lucy Walker, and at
the time of the execution of the deed to the appellant
A. Collins Kirby, she was living in Birmingham, Ala.

The appellant was an intelligent man of affairs, and was engaged in the general merchandise business at his home in Collinsville. Tony Collins, the grandfather of appellee, was a man of about 90 years of age, and, at the time of the execution of the deed by Lucy Arnold, resided on the lot in question at Collinsville. On or about the 16th day of March, 1883, Tony Collins and his wife conveyed the property to Harriet Johnson and Matilda Robinson, their daughters, one of whom (Harriet Johnson) subsequently died, leaving Lucy Arnold and another child as her only heirs at law and next of kin. After this conveyance, and the death of Harriet Johnson, Tony Collins and his wife conveyed a strip of seven feet in width along the side of these lots, to the city of Collinsville, for a sidewalk. The defect in his title being discovered, the mayor of Collinsville sought to perfect the title by procuring conveyances from the children and grandchildren of Tony Collins. In doing this, the mayor requested appellant to procure for the city a deed to this sidewalk from the appellee, Lucy Walker or Lucy Arnold as she was called. He states in his testimony that: "We got the signature of Matilda Robinson and Susie Johnson, and were informed that Collins Kirby could get the signature of Lucy Walker."

He prepared a deed to the seven-foot sidewalk, from appellee to the city, and sent the appellant to Birmingham to have the same executed by her. The appellant carried with him, to Birmingham, one Marvin Edwards, a cousin of appellee, who located her as living with Estella Broadnax, in that city. At the house of witness Broadnax, appellant, Kirby, in the presence of Estella Broadnax, told appellee he wanted her to sign a deed for seven feet of ground in Collinsville; that the rest of her relatives had signed and gotten their

$12.50, and he would give her the same amount as soon as she signed the deed; that there was no harm in it; and that if she did not sign the deed they would put old man Tony Collins, her grandfather, in the mines. The conveyance of no other land was mentioned than that of the seven feet that had been previously sold by Tony Collins to the city as a sidewalk.

The testimony of the appellee showed that the only discussion by A. Collins Kirby with Lucy Walker or Arnold, at the Broadnax house, was of the alleged fact that: "The city had got in behind Tony Collins about that seven feet he had sold the city years before, and they had sent him out to hunt up Lucy Arnold, and if I did not sign it they were going to penitentiary my grandfather. He said they had all signed it but me. He had my grandmother's name, Lizzie Collins, Tony Collins, Matilda Robinson, and Susie Johnson, and he had paid them all $12.50 around, and as soon as I signed he would pay me mine." That "Mr. Kirby did not say anything about buying my interest in lots 29 and 30 in the town of Collinsville. He did not say anything to me about making him a deed to these lots. I did not sign any deed to these lots with my knowledge."

Witness further stated that she was living, at the time of the signing of the deed, at the house of Estella Broadnax, that her husband was away, but that she was living with him at the time.

Appellee is corroborated by the witnesses Marvin Edwards and Estella Broadnax, as to the statement made to her by A. Collins Kirby, at the house of Estella Broadnax, and that it was a request to her to sign a deed for seven feet of ground with the statement that if she did not sign it they would put old man Tony in the mines; and that a conveyance of an interest in no other lands was mentioned. The witnesses Marvin Ed-

wards and the notary taking the acknowledgment, J. W. Morrow, testified that no money was paid appellee by appellant, in the office of the notary; and witness Marvin Edwards corroborates the appellee to the effect that only $12.50 was given her "out on the courthouse steps," and that the same was a $10 bill, two $1 bills, and 50 cents in silver, and that he gave Marvin Edwards $12.50 and expenses, to go with him from Collinsville to Birmingham, to find appellee.

Witness Broadnax in her testimony shows that appellee was an ignorant negro woman; that she "has not got real good sense."

An examination of appellant's testimony shows that he admits the employment of Marvin Edwards to go with him to Birmingham and locate Lucy Walker (Arnold); and he alleges that "when Lucy Walker was found (at her home, which was at the Broadnax woman's house), and the proposition was explained to her, she agreed to sign the deed, and that at that time she made another proposition that I buy her undivided interest in that property, stating that her husband had deserted her and her four or five children, and offering to sell the undivided interest;" and that she got into the carriage with Marvin Edwards and appellant and drove to the Jefferson county court house, where both of the deeds were executed, one to the town of Collinsville, for the seven feet, that had already been signed by Tony Collins et al., and one conveying her undivided interest in the remaining two lots to appellant. Appellant's testimony also shows that the notary asked appellee if she could read and write, and that she answered, "No;" that he asked her if she knew what she was signing, and she said, "Yes;" that the notary read the deeds in full; and that appellant paid her $25 as the

consideration for the undivided interest that she was deeding to appellant in Mr. Morrow's presence.

Appellant admitted, on cross-examination: "That the deed that Lucy signed was prepared in Collinsville before I left Collinsville. I had no written agreement with Lucy as to when I would take possession. The deed that was given that day was all that was given in reference to it, and that deed was prepared by me before I went to Birmingham. I expected her to approach me about selling to me as she had before she had left home."

There was much testimony as to the value of the interest of Lucy in the lots. The witnesses examined by appellee, W. P. Ellis, Dr. H. T. Appleton, Dr. W. H. Marsh, and V. M. Brindley, testify that each of the lots was worth about $750 at the time the deed was executed.

Witnesses examined by the appellant as to the value of the property in question place a less value thereon, one J. L. Graves stating that in 1911 these lots were worth $200 if with immediate possession. Witnesses A. G. Franklin and L. S. Nicholson say that to the best of their judgment the market value of the lots was about $300 or $400. The testimony was based upon the idea that the appellee had an undivided one-fourth interest in the lots, subject to the life estate of Tony Collins and wife. These witnesses for the appellant were not asked to give the value of a one-half interest in lot 30, which the appellee conveyed. The deed introduced showed that there was no life estate in Tony Collins and the deed made by appellee to appellant contains no reservation of a life estate.

(1, 2) We are of the opinion that the whole evidence shows that this grossly ignorant negro woman had no adequate conception of the transaction, and was sign-

ing the papers which the intelligent man of affairs had requested her to, intending thereby to release from prosecution by the city of Collinsville her grandfather, Tony Collins, and that she did not know she was conveying, or intended to convey, any lots to appellant. And, the consideration of only $12.50 therefor, so paid her, we think, was a grossly inadequate consideration for the property conveyed appellant.

To test these facts by the rules of law long governing in courts of chancery, we note that Mr. Pomeroy says: 'When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like on the part of the other, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative."—2 Eq. Jur. (3d. Ed.), pp. 1670, 1671, § 928.

Mr. Beach says: "There are cases, where there is no positive evidence of fraud, and yet the inequality of the bargain is so gross that the mind cannot resist the inference that it was improperly obtained. In such cases a court of equity avoids the bargain, not merely on account of its gross inequality, but because such inequality furnishes the 'most vehement presumption of fraud.' "— 1 Modern Eq. Jur., § 143; *Parmlee v. Cemeron*, 41 N. Y. 392; *Dunn v. Chambers*, 4 Barb. (N. Y.) 376.

In *Chesterfield v. Jansen*, 2 Ves. Sen. 125, it was laid down by Lord Hardwicke that equity has jurisdiction to relieve against every species of fraud. And in the leading modern case of *Slim v. Croucher*, 1 De G., F. & J. 518, Lord Justice Turner observed that if the court were not to grant relief, in such cases it would

[Kirby v. Arnold.]

be very much narrowing an old jurisdiction of the court, by confining it to cases in which the jurisdiction has been exercised; that it would be "taking the cases as the measure of the jurisdiction, instead of as examples of that jurisdiction."

The rule as laid down in *Earl of Aylesford v. Morris,* L. R. 8 Chap App. 484, is that from the circumstances or conditions of the parties contracting—weakness on one side, usury on the other, or extortion or advantage taken of that weakness—a presumption of fraud arises; and in this connection it may be said that: "Fraud does not mean deceit or circumvention, but means an unconscientious use of the power arising out of these circumstances and conditions, and, where the relative positions of the parties is such as prima facie to raise the presumption, the transaction cannot stand unless the person claiming the benefit of it be able to repel the presumption by contrary evidence proving it in point of fact to have been just and reasonable."

In *Underhill v. Norwood,* 10 Ves. 211, Lord Eldon said: "If the terms are so extremely inadequate as to satisfy the conscience of the court of pressure on the party's distress, which, in the view of the court, amounts to oppression, the court will order the instrument to be delivered up."

In *Davis v. Luster,* 64 Mo. 43, 45, the court said: "In the present case, the threats were not made against the plaintiff, but only to the plaintiff and against his brother, and in this respect it differs from all the cases we have examined involving the question of legal duress. But it has long been the habit of courts of equity to relieve parties from contracts made under the influence of threats, or of apprehensions not amounting to legal duress. Where a fraudulent advantage has been taken of the fears, the affections, or the sensibilities of a par-

ty, equity will grant relief. Judge Story says that circumstances of extreme necessity and distress of a party, though not accompanied by any direct restraint or duress, may so entirely overcome his free agency as to justify the court in setting aside a contract made by him on account of some oppression or fraudulent advantage or imposition attendant upon it."

In *Abercrombie v. Carpenter,* 150 Ala. 294, 43 South. 746, this court declared the rule, in dealings between the strong and intelligent and the weak and ignorant as follows: "The crowning glory of courts of equity is to protect the weak and ignorant from imposition by the strong and intelligent, and, while it is true that certain relations of life have been definitely pointed out as raising a presumption of confidence and dependence, yet the general principle is that when one who is strong and well-informed deals with one who is ignorant, weak, and occupying a position of dependence or subordination, the stronger should exercise that uberrima fides in his dealings which leaves no trace of imposition."—*Irwin et ux. v. Coleman et ux.,* 173 Ala. 175, 181, 55 South. 492.

Our court has recently declared that, where the consideration for the deed was so grossly inadequate as to strike the understanding with the conviction that the transaction was not fair and bona fide, the deed should be set aside.—*Thornton v. Pinckard,* 157 Ala. 206, 47 South. 289; *Peugh v. Davis,* 96 U. S. 332, 24 L. Ed. 775. For grossly inadequate consideration, or because secured by unfair advantage taken of the mental weakness of the grantor, a deed will be set aside on timely application.—*Walling v. Thomas,* 133 Ala. 428, 31 South. 892.

Under the facts of the case at bar, the burden of proof was on the grantee to show that the transaction

was fair, and not oppressive of the ignorant and weak by the strong and dominating.—*Yarbrough v. Harris*, 168 Ala. 332, 52 South. 916, Ann. Cas. 1912A, 702.

The deed by the ignorant negro woman, sought to be canceled, was made without the advice of her grandfather, and under the fear of a threat of prosecution of her aged grandparent. Was she not in a position of weakness and subordination, in dealing with a man of affairs, who went from Collinsville to Birmingham expecting to secure her property, and that at a grossly inadequate compensation? Appellee's desire to aid her aged grandparent was to be commended; appellant's conduct in taking to himself the deed could not have been upheld by the chancellor, nor will it be permitted to go unchallenged and unannulled by this court. To protect the weak and ignorant from imposition by the strong and intelligent is the exercise of a high-minded honesty and "the crowning glory of courts of equity."

The decree of the chancery court is affirmed.
Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.