ALMON, Justice.
This is an appeal from a suit brought by William Reed,[1] Willie Mae Reed, Mattie Boykin and Elbert Reed against Delphine Davidson, her son, Lamar Davidson, as agent or employee of Delphine, and others. The trial judge held the deeds given the appellants (Davidsons) by the appellees null and void and ordered the property sold for division. Each deed conveyed an interest in the same 160 acres originally owned by Andrew Reed. Each appellee had acquired his interest in the land through the laws of descent and distribution.
Andrew Reed died in 1909 leaving a wife who died in 1941, and the following children:
1. A son, William Reed, appellee.
2. A daughter, Mattie Boykin, appellee.
3. A daughter, Hattie Reed Murphy, who died intestate subsequent to the death of Andrew Reed, survived by appellee, Elbert Reed, her son, as her sole heir at law and next of kin.
4. A son, Pies Reed, who died subsequent to the death of Andrew Reed and was survived by a daughter, Marie Reed, now deceased without issue.[2]
5. A son, Willie Reed, who died intestate and without issue subsequent to the death of Andrew Reed and is survived by his widow, Willie Mae Reed, appellee.
Three issues are presented for review: (1) with respect to the deeds from William Reed, Mattie Boykin and Elbert Reed to Delphine Davidson, whether the allegata and probata correspond; (2) with regard to the deed from Willie Mae Reed to Delphine Davidson, whether a dower interest can be conveyed prior to assignment; and (3) whether the right to have a life estate assigned can be sold for division.
As to the first issue, appellants argue that the allegations of the complaint alleged fraud based on certain specified misrepresentations and an inadequate consideration, and that the specified misrepresentations were not proven.
“It has long been the rule of our cases that the allegata and probata must correspond and if the proof does not correspond with the bill’s allegations, there can be no recovery.” Mid-State Homes, *1290 Inc. v. Cone, 294 Ala. 310, 311, 316 So.2d 333, 334 (1975). See Vol. 8A Ala.Dig., Equity &wkey;327.
(The instant case was tried prior to the New Alabama Rules of Civil Procedure.)
In Item VII of the complaint appellees alleged that Delphine Davidson, acting through her son, Lamar Davidson, made certain fraudulent misrepresentations in obtaining the conveyances from Mattie Boy-kin, William Reed, and Elbert Reed together with the allegation of inadequate consideration. More specifically, they alleged that Lamar told Mattie Boykin that she owned only 15 acres and that he was paying her one hundred dollars per acre, that unless she sold to him she would get nothing from her interest in the land because a third party was foreclosing on them, and that the deed did not include a certain house site; that Lamar told William Reed that the deed did not include a certain house site, and that unless he sold to him he would get nothing because a third party was foreclosing on them; and that Lamar told Elbert Reed that Elbert owned no interest in the land and that he only needed a deed from him to clear the title that Lamar was purchasing from the other heirs, and that Lamar had already paid William Reed, Mattie Boykin, and Willie Mae Reed all that the land was worth.
We do not understand appellees to argue in brief or in oral argument that the alleged misrepresentations were proven. Rather, they argue that the holding of the trial judge is based on the theory of fraud explained in Abercrombie v. Carpenter, 150 Ala. 294, 43 So. 746 (1907):
“The crowning glory of courts of equity is to protect the weak and ignorant from imposition by the strong and intelligent, and while it is true that certain relations of life have been definitely pointed out as raising a presumption of confidence and dependence, yet the general principle is that when one who is strong and well-informed deals with one who is ignorant, weak, and occupying a position of dependence or subordination, the strongest should exercise that uberri-ma fides in his dealings which leaves no trace of imposition. Mr. Pomeroy says: ‘When the accompanying incidents are inequitable and show bad faith, such as concealments, misrepresentations, undue advantage, oppression on the part of one who obtains the benefit, or ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like, on the part of the other, these circumstances, combined with inadequacy of price, may easily induce a court to grant relief, defensive or affirmative.’ (Citations omitted.)” Id., at 296, 43 So. at 747.
See also Burke v. Taylor, 94 Ala. 530, 10 So. 129 (1891); Yarbrough et al. v. Harris, 168 Ala. 332, 52 So. 916 (1910); and Kirby v. Arnold, 191 Ala. 263, 68 So. 17 (1915).
We agree with appellants and appel-lees that the specified misrepresentations were not proven. This leaves the question of whether the theory of fraud found in Abercrombie, supra, was pleaded and if so, whether the proof was sufficient to support the pleading.
Immediately preceding Item VII (containing the alleged misrepresentations) was the following:
“VI
“That the complainants are uneducated and inexperienced in buying, selling and dealing in land and real property, and have always had to depend upon people who are educated and experienced in dealing with real property to advise them in handling the land described in Paragraph III hereinabove.”
Item VI is the only part of the complaint where the appellees even inferentially allege that the Davidsons took undue advantage of any of the appellees. However, this is merely a statement made in support of appellees’ fraudulent misrepresentation claim; it is not alleged as a basis of the fraud itself. Thus, the complaint did not contain an allegation of fraud based on .undue influence or undue advantage to support whatever evidence was offered under this theory. Such being the case, no recov *1291 ery can be allowed. Mid-State Homes, Inc., supra.
Moreover, the evidence will not support the theory of undue influence or undue advantage. We have read the record and the facts do not exist in this case that existed in Abercrombie, supra, Yarbrough, supra, or Kirby, supra. While the evidence does show that Lamar Davidson was dealing with uneducated, elderly blacks who did not know exactly what interest they owned in the land and who received only approximately one-third of what the land was worth, there was no showing that they were told they were signing a mortgage when it was actually a deed as in Aber-crombie, or that an agency relationship existed between grantor and grantee as in Burke, or that the grantor’s attorney was used to influence the conveyance as in Yarbrough, or that the grantee represented that the deed was for 7 feet of ground when it was actually for two lots as in Kirby.
“. . . [Inadequacy of consideration is not in itself sufficient to set aside a deed. [Citations omitted]. ‘Every person, who is not under some legal disability, may dispose of his property in such manner and upon such terms as he sees fit; and whether his bargains are discreet or not, profitable or unprofitable, are considerations not for the courts of justice, but for the party himself. [Citations omitted].’ ” Aiken v. Barnes, 247 Ala. 657, 659, 25 So.2d 849, 850 (1946).
The second issue is whether the conveyance by Willie Mae Reed of her dower interest in her husband’s estate prior to assignment or allotment of that interest to her will be upheld in a court of equity. The estate of her husband, Willie Reed, son of Andrew Reed, was never probated.
This issue was decided in Wilkinson v. Brandon, 92 Ala. 530, 9 So. 187 (1890):
“A conveyance of the dower interest to a person other than the terre-tenant, before it is assigned, has different operation at law and in equity. The widow having no fixed, determinate estate in any specific part of the land until dower is allotted, her antecedent conveyance to a stranger passes no legal estate, and is inoperative at law; and, when made to the terre-tenant, operates in the nature of a release, or extinguishment of the right of dower. Until assigned, her right to dower is an equity, of which a court of law does not take cognizance; but, on the principle, that an assignment of a right in action, though not assignable at law, will be protected in equity, a court of equity will uphold the widow’s alienation of her dower interest to a stranger, and protect the rights of the alienee, there being a valuable consideration paid, and the absence of fraud, imposition or undue advantage.” Id. at 530-531, 9 So. at 188.
See also Aniton v. Robinson, 273 Ala. 76, 134 So.2d 764 (1961). Consequently, the trial judge also erred in holding this deed null and void.
Having concluded that none of the four deeds should be declared null and void, we see no need to proceed to other issues.
REVERSED AND REMANDED.
HEFLIN, C. J., and BLOODWORTH, MADDOX, JONES, SHORES, EMBRY and BEATTY, JJ., concur.

. William Reed died January 12, 1973, prior to completion of the trial. His six sons and daughters were substituted as party complainants.

. A guardian ad litem was appointed for Marie Reed if living, or her unknown heirs at law, next of kin, devisees or legatees, if deceased, and for some other unknown heirs. Some testimony indicated that Marie Reed moved to Milwaukee, Wisconsin, 30 to 35 years ago. Her rights have not been appealed and we express no opinion as to her interest in the land.